**Alan B. BURDICK, Plaintiff,**

v.

**Morris TAKUSHI, Director of Elections, State of Hawaii; John Waihee, Lieutenant Governor, State of Hawaii, Defendants.**

**Alan B. BURDICK, Plaintiff,**

v.

**Benjamin CAYETANO, in his individual capacity as Lieutenant Governor of the State of Hawaii; Morris Takushi; Director of Elections of the State of Hawaii, Defendants.**

**Civ. Nos. 86–0582 HMF, 88–0365 HMF.**

United States District Court,
D. Hawaii.

May 10, 1990.

584

American Civil Liberties Union, Kirk Cashmere, Honolulu, Hawaii, Mary Blaine Johnston, Johnston & Day, Wailuku, Maui, Hawaii, and Alan B. Burdick, Honolulu, Hawaii, for plaintiff.

Warren Price and Steven Michaels, Honolulu, Hawaii, for defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTIVE RELIEF; DENYING DEFENDANTS' COUNTER–MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANTS' CONDITIONAL COUNTER–MOTION FOR STAY

FONG, Chief Judge.

## INTRODUCTION

On May 7, 1990, the court heard oral argument on plaintiff's motion for summary judgment and permanent injunctive relief and defendants' counter-motion for summary judgment and conditional counter-motion for stay.

## BACKGROUND

In June 1986, plaintiff Alan B. Burdick notified defendants, the Director of Elections and the Lieutenant Governor (who serves as the Chief Elections Officer), that he wished to cast one or more write-in votes in the September 1986 primary elections and in future elections. After consulting with the Attorney General's office, defendants advised plaintiff that Hawaii election laws did not provide for write-in voting and that such votes would be disallowed or ignored.

Burdick filed suit in federal district court, claiming that Hawaii's ban on write-in voting violated both the Hawaii Constitution and the United States Constitution. This court agreed, granting plaintiff's motion for summary judgment on the ground that the refusal to permit write-in voting violated plaintiff's constitutionally guaranteed freedoms of expression and association. This court then issued an injunction ordering defendants to provide for the casting and counting of write-in votes in the 1986 general election. Defendants moved for a stay of this court's 1986 injunction which this court denied on October 8, 1986.

Defendants appealed this court's September 29, 1986 order to the Ninth Circuit Court of Appeals, and obtained a stay of the order pending appeal. On May 17, 1988,[1] the appellate court issued a decision vacating this court's order on the ground that this court should have abstained from ruling on the federal constitutional issue. The appellate court found that *Pullman* abstention was proper in this case since the question whether Hawaii's statutes or constitution required or permitted write-in voting was an undecided question of state law, and a definitive resolution of this question might have obviated the need to decide the

---

**1.** Coincidentally, knowing the length of time it might take the Ninth Circuit to adjudicate defendants' appeal and unaware that the Ninth Circuit opinions would be issued the same day, plaintiff Burdick filed a new action (*Burdick v. Cayetano*, Civil No. 88–0365) on May 17, 1988. The two actions were later consolidated.

federal constitutional question. *Burdick v. Takushi*, 846 F.2d 587 (9th Cir.1988), citing *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Following the Ninth Circuit's decision, the following questions were certified to the Hawaii Supreme Court:

(1) Does the Constitution of the State of Hawaii require Hawaii's election officials to permit the casting of write-in votes and require Hawaii's election officials to count and publish write-in votes?

(2) Do Hawaii's election laws require Hawaii's election officials to permit the casting of write-in votes and require Hawaii's election officials to count and publish write-in votes?

(3) Do Hawaii's election laws permit, but not require, Hawaii's election officials to allow voters to cast write-in votes, and to count and publish write-in votes?

On July 21, 1989, the Hawaii Supreme Court entered a ruling, answering "No" to each of the three questions presented. The court found that Hawaii's statutory election scheme precluded write-in balloting and found this ban on write-in voting permissible under the Hawaii state constitution. *Burdick v. Takushi*, 70 Haw. 498, 776 P.2d 824 (1989).

Now that the Hawaii Supreme Court has found that Hawaii's statutory election scheme prohibits write-in voting, the federal constitutional issue which this court decided three-and-a-half years ago is again before this court. Specifically, this court must decide whether Hawaii's ban on write-in voting violates the First and Fourteenth Amendments to the United States Constitution.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.*, 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Building Products, Inc. v. Franciscan Ceramics*, 818 F.2d 1466 at 1468, *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

██ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

## DISCUSSION

The facts of this case are simple and undisputed. Since both parties are asking this court to grant summary judgment in their favor, they agree that no material issue of fact is in dispute and that the court need only concern itself with the disputed issue of law: the constitutionality of Hawaii's ban on write-in voting.

Plaintiff argues that Hawaii's ban on write-in voting violates his and all other voters' free speech rights guaranteed by the U.S. Constitution. Defendants argue that the burden on plaintiff's constitutional rights is permissible because compelling state interests are served by the ban on write-in voting.

Initially, the court must determine the appropriate standard of review by which it will adjudge the validity of the challenged prohibition. "Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). Such challenges usual-ly are governed by a balancing test. Under this balancing test,

... a court must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570 (citations omitted). *See also Erum v. Cayetano,* 881 F.2d 689 (9th Cir.1989); *Dixon v. Maryland State Administrative Board of Election Laws,* 878 F.2d 776 (4th Cir.1989); *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board,* 844 F.2d 740 (10th Cir.1988).

Recently, the United States Supreme Court applied a strict scrutiny standard of review in assessing the constitutionality of a state election law. *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). The Court held:

To assess the constitutionality of a state election law, we first examine whether it burdens rights protected by the First and Fourteenth Amendments. If the challenged law burdens the rights of political parties and their members, *it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, and is narrowly tailored to serve that interest.*

*Id.* 109 S.Ct. at 1019–20. *See also McLain v. Meier,* 851 F.2d 1045, 1049 (8th Cir.1988) (applying strict scrutiny standard of review).

This court applied the *Anderson* balancing test when it evaluated plaintiff's constitutional challenge three-and-a-half

years ago. Since *Anderson* still appears to be the applicable standard in the Ninth Circuit, this court again will utilize the *Anderson* balancing analysis today. *Erum v. Cayetano*, 881 F.2d 689 (9th Cir. 1989). However, the court will also bear in mind the fact that recent Supreme Court authority suggests a stricter standard of review may be appropriate. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).

## I. Character and Magnitude of Injury to Plaintiff's First and Fourteenth Amendment Rights

■ The right to vote for the candidate of one's choice is a fundamental right. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

Indeed, "[t]he right to vote freely for the candidate of one's choice is [ ] the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Socialist Labor Party v. Rhodes*, 290 F.Supp. 983, 987 (S.D.Ohio 1968). "Rights relating to the franchise implicate the First Amendment 'with its guarantee that an individual be allowed to participate in the most general communicative processes that determine the contours of our social and political thought.'" *Canaan v. Abdelnour*, 40 Cal.3d 703, 221 Cal.Rptr. 468, 473–74, 710 P.2d 268, 273–74 (1985), citing Tribe, *American Constitutional Law* at 737.

■ The electoral process is the process by which voters select candidates to fill representative political offices. The State may not unduly burden the freedom of choice which a voter exercises in the voting booth. If a citizen has the right to vote, a right which is guaranteed by the U.S. Constitution, then he should be allowed to vote for any candidate of his choice, subject to reasonable conditions and qualifications imposed by the State. *See Socialist Party v. Rhodes*, 290 F.Supp. 983 (S.D.Ohio 1968).

■ Hawaii's absolute ban on write-in voting also affects the rights of association and political expression of both voters and potential candidates. *Canaan v. Abdelnour*, 40 Cal.3d 703, 221 Cal.Rptr. 468, 473, 710 P.2d 268, 273 (1985). It is a well-established tenet that "speech concerning public affairs is more than self-expression; it is the essence of self government." *Id.* at 479, 710 P.2d at 279. Being able to vote for the candidate of one's choice, even when that candidate is not one of the listed candidates on the ballot, is the type of significant political expression which the First Amendment was designed to protect. Similarly, the First Amendment protects the right to freely participate in the electoral process. Political participation should not be limited to those who adhere to the ideals and goals of the major political parties, but should include all citizens who wish to publicly demonstrate support for a certain candidate or political theory. *Socialist Party v. Rhodes, supra* at 987.

A ban on write-in voting directly burdens the voter's right to freely vote for the candidate of his choice by completely precluding that voter's choice. This burden is of a significant magnitude given the importance of the right impaired.

There has been some suggestion that the right to be a candidate for political office, in and of itself, may not be a fundamental right. *Dixon v. Md. State Administrative Election Laws*, 878 F.2d 776, 779 (4th Cir. 1989). This court recognizes that "not all restrictions imposed by the States on candidates' eligibility ... impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. at 788, 103 S.Ct. at 1569. However, this court is not being asked to decide the constitutionality of an election statute restricting a candidate's access to the ballot or the candidate's right to have the State print his name on the ballot. This court must decide the constitutionality of Hawaii's prohibition on a voter's right to vote for the candidate of his choosing, even if that candidate is

not one of the candidates on the printed ballot.

This court realizes that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Canaan v. Abdelnour,* 40 Cal.3d 703, 221 Cal.Rptr. 468, 474, 710 P.2d 268, 274 (1985). Nevertheless, the court is not as greatly concerned with *the candidate's* right to run for political office as it is with *the voter's* right to vote for the candidate of his choice, associate with the candidate of his choosing, and exercise freedom of political expression. Therefore, even though the right to be a candidate for political office in and of itself may not be a fundamental constitutional right, this right, in conjunction with the deprivation of freedom of expression and the right to vote, two established fundamental rights, amounts to an enormous injury to plaintiff's First and Fourteenth Amendment rights. Accordingly, this court finds that the character and magnitude of the alleged burden on plaintiff's constitutional rights is significantly great.

II. *The Interests Which the State Has Presented as Justifications for the Burden on Plaintiff's Constitutional Rights*

▪ The State has presented three main interests which it asserts are sufficiently compelling to justify the enormous burden on plaintiff's constitutional rights. These are: (1) the interest in avoiding factionalism or confining intra-party feuds, (2) the interest in fostering an informed electorate, and (3) the interest in protecting the primary mandate.

The first interest which the State advances is the State's interest in confining intra-party feuds. The State argues that the ban on write-in voting is necessary to limit the problems that arise when a defeated party candidate carries an intra-party feud into the general election campaign. The State fears that a "sore loser" who failed at the nomination or primary stage would be able to wage a new campaign if write-in voting were allowed. Prohibiting write-in voting at the general election stage, according to the State, ensures that the primary election "is not merely an exercise or warm-up for the general election but an integral part of the election process." *Storer v. Brown,* 415 U.S. 724, 735, 94 S.Ct. 1274, 1281, 39 L.Ed.2d 714 (1974). Such a ban allegedly enables the State to reserve the general election for major struggles. *Id.* at 734, 94 S.Ct. at 1281.

In *Storer v. Brown, supra,* the United States Supreme Court decided the constitutionality of a California statute forbidding an independent candidate from a place on the ballot if he was affiliated with a political party within one year prior to the preceding primary election. In that context, the Court defended the California electoral process and its disaffiliation requirement. The Court, however, did not address the issue of the constitutionality of a ban on write-in voting.

The interest in avoiding unrestrained factionalism has been recognized as a compelling interest in at least two ballot-access cases. *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Erum v. Cayetano,* 881 F.2d 689 (9th Cir.1989). An interest can be a compelling interest in certain circumstances, yet fail to rise to that level of compellingness in other sets of circumstances. *See Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (recognizing that the state's interests in a stable government and protecting voters from confusion were compelling or at least legitimate interests, but finding these interests insufficient to justify California's ban on primary endorsements by political parties); *Democratic Party of United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981) (holding that Wisconsin's asserted compelling interests in preserving the integrity of the election process, providing secrecy of the ballot, increasing voter participation in primaries, and preventing harassment of voters did not justify the State's substantial intrusion into the associational freedom of members of a minor party). This is particularly true in the present case.

The State cites several cases to demonstrate that the interests it asserts as justifications for the ban on write-in voting are compelling and necessary, but none of the cases it relies upon ever squarely addressed the issue of write-in voting that this court faces. *See, e.g., Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986) (deciding constitutionality of Washington statute requiring a minor-party candidate to receive at least 1% of all votes cast for an office in a primary election before his name could be placed on the general election ballot); *Erum v. Cayetano,* 881 F.2d 689 (9th Cir. 1989) (deciding constitutionality of Hawaii statute requiring non-partisan candidates, in order to have their names printed on the general election ballot, to receive 10% of the votes cast in the primary election or at least as many votes as the least favored, successful partisan candidate); *McLain v. Meier,* 851 F.2d 1045 (8th Cir.1988)[2] (deciding constitutionality of North Dakota statute requiring third party candidates to collect 7,000 signatures 55 days before the primary election and independent candidates to collect 1,000 signatures 55 days before the general election in order to be placed on the ballot); *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board,* 844 F.2d 740 (10th Cir.1988) (deciding constitutionality of Oklahoma statute requiring the filing of a petition with 5% of the total votes cast in the last gubernatorial or presidential election to create a new party); *Hall v. Simcox,* 766 F.2d 1171 (7th Cir.1985) (deciding constitutionality of Indiana statute requiring minor parties wishing to be listed on the ballot to submit petitions with 2% of the number of persons who voted in the preceding election).

In *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), the United States Supreme Court examined a provision of the California Election Code which banned primary endorsements by political parties and imposed restrictions on the internal governance of political parties. One of the State's arguments in support of its electoral scheme was that a party that issues primary endorsements risks intraparty friction which might endanger the party's general election prospects. *Id.* at 1022. The Court, however, held:

> [E]ven if a ban on endorsements saves a political party from pursuing self-destructive acts, that would not justify a State substituting its judgment for that of the party. *Because preserving party unity during a primary is not a compelling state interest, we must look elsewhere to justify the challenged law.*

*Id.* at 1022–23 (citations omitted). *See also Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (holding that the State's asserted interest in political stability amounts to a desire to protect existing political parties from competition generated by independent candidates who have previously been affiliated with a party, an interest that conflicts with First Amendment values).

In this case, the State's asserted interest in avoiding intraparty factionalism is not compelling under the present circumstances because it amounts to a desire to quash any possible competition generated by a candidate who does not have a place on the printed ballot, but who may garner support as a write-in candidate. This strikes at the very heart of our democratic processes and our country's long history of self-governance. The State should not paternalistically substitute its judgment as to what the voters want for the voters' own judgment. If even one voter wishes to dissent from the voice of the majority by writing in the name of a candidate not available on the printed ballot, this court believes that is his right to do so.

The second interest advanced by the State is the interest in fostering an in-

---

**2.** The *McLain* court did not address the question whether a ban on write-in voting violated the plaintiff's rights on the ground that the federal district court lacked federal jurisdiction to hear this claim. The *McLain* court's reasoning is difficult to understand. When a voter challenges a ban on write-in voting as violative of his First and Fourteenth Amendment rights under the U.S. Constitution, it appears that the claim "arises under" a federal question by virtue of the fact that the plaintiff is alleging the violation of the U.S. Constitution.

formed electorate. This interest includes not only the interest in having an electorate which is fully informed about who is seeking office and what that candidate stands for, *Gebelein v. Nashold*, 406 A.2d 279, 281 (Del.Ch.1979)[3], but also the interest in protecting the integrity of the political process from frivolous or fraudulent candidacies. *McLain v. Meier*, 851 F.2d 1045, 1051 (8th Cir.1988).

The State certainly has a legitimate interest in fostering an informed electorate. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 1023, 103 L.Ed.2d 271 (1989). However, this interest may not always be considered sufficiently weighty to justify a burden on constitutional rights. *Id.* at 1023. "Moreover, as a matter of practical politics, the electoral process contains its own cure for voters' ignorance about a particular candidate. Unknown candidates simply do not win large numbers of votes. A key goal of every political campaign is to promote the candidate's name identification among the electorate." *Anderson v. Celebrezze*, 460 U.S. 780, 789–90 n. 25, 103 S.Ct. 1564, 1570–71 n. 25, 75 L.Ed.2d 547 (1983).

Similarly, although the State's interest in protecting the electoral process from frivolous or fraudulent candidacies may be legitimate and even compelling in certain circumstances, it is not always recognized as such. The Court of Appeals for the Fourth Circuit encountered this predicament in *Dixon v. Maryland State Administrative Board of Election Laws*, 878 F.2d 776 (4th Cir.1989). In that case, the court was asked to decide the constitutionality of Maryland's requirement that write-in candidates for public office pay a filing fee of $150. The court found this statute unconstitutionally interfered with voters' right to elect candidates of their choice. One of the state's asserted interests was denying official recognition to fraudulent and frivolous candidates to minimize voter confusion and preserve the integrity of the political process. The court recognized this interest as indisputably a legitimate and weighty one in some circumstances. The court explained:

> In cases involving candidates seeking positions on ballots, for example, the Supreme Court has acknowledged that weeding out spurious candidates for these reasons is a valid objective. In our view, *this concern does not weigh as heavily where according official status to write-in candidates in advance of election day is concerned.* In this context, where the voters have time to study the candidates to gauge their seriousness prior to the actual balloting, it would seem that room is available for a broader range of candidates representing a wider spectrum of interests.

*Id.* at 784 (citations omitted).

In this case, a complete ban on write-in voting does not serve a compelling interest in avoiding fraudulent or frivolous candidacies. Whatever spurious and frivolous candidates the ban on write-in voting weeds out, it also stifles what may be serious, legitimate candidacy. *Canaan v. Abdelnour*, 40 Cal.3d 703, 221 Cal.Rptr. 468, 478, 710 P.2d 268, 278 (1985). Moreover, it appears that write-in voting is allowed in most other states.[4] It is unlikely that so many state legislatures would provide for write-in voting if the dangers of frivolous candidacies and uninformed voters were re-

---

**3.** The Court of Chancery of Delaware in *Gebelein* never resolved the issue of whether the Town's refusal to permit write-in ballots at the annual municipal election was unconstitutional. The court merely recognized the interests of both the voters and the municipality, stating:

> The officials of Frederica and similar small municipalities therefore have the difficult task of attempting to balance two competing interests. The first is the right of voters to express their displeasure at those who are serving as town officials. One way to express this disapproval is for them to write in names on a

ballot ... The second interest is the right of the electorate to be fully informed as to whom is seeking office and what they stand for. There is no easy answer to this dilemma and since the issue is not now properly before me, a definitive answer must await another day.

**4.** Plaintiff claims that 48 states allow some form of write-in voting. The State recognizes that at least twenty states provide for limited write-in voting. *See* Defendant's Reply Memorandum at 6.

ally a significant problem. *Id.* at 479, 710 P.2d at 279.

Finally, the state's asserted interest in protecting the primary mandate includes its interest in finality and protecting the integrity of the election process. The State argues that under the current automatic-seating provision, a primary winner who faces no opposition can be seated automatically. If the State were required to count write-in votes, this might result in a candidate who would have been seated automatically under the present electoral scheme, being forced to continue to spend time and money campaigning even though he otherwise would have won.

The State certainly has a legitimate interest in protecting the integrity of its election process. *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 1024, 103 L.Ed.2d 271 (1989). Nonetheless, it is against the notion of representative government for the State to deprive voters of the right to vote for the candidate of their choice to protect the primary winner from having to spend time and money campaigning. The essence of our system of self-government is the marketplace of ideas. "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' ... This no more than reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Federal Election Comm'n v. Natural Conserv. Pol. Action,* 470 U.S. 480, 493, 105 S.Ct. 1459, 1466, 84 L.Ed.2d 455 (1985), citing *Buckley v. Valeo,* 424 U.S. 1, 14, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).

If a write-in candidate can command so much attention that he poses a threat to an otherwise automatically-seated primary winner, then it is worth the extra time and money for the electorate to be exposed to

increased debate and public discussion. It is often the unpopular views of minor or non-party candidates which become the views of the mainstream by virtue of being expressed.

A balancing of the rights of the voters against the interests asserted by the State leads this court to the conclusion that Hawaii's prohibition on write-in voting is unconstitutional. The absolute ban on write-in voting burdens the right to freely vote for the candidate of one's choice, and implicates the rights of free expression and association. None of the interests the State has asserted is sufficiently weighty to justify this enormous burden on plaintiff's constitutional rights. Therefore, applying the *Anderson* balancing analysis, this court holds that Hawaii's ban on write-in voting impermissibly infringes on plaintiff's First and Fourteenth Amendment rights.

The State raises several peripheral arguments in its countermotion for summary judgment outside the scope of the applicable balancing analysis. The State argues that this court's ruling in 1986 that Hawaii's ban on write-in voting is contrary to now settled law. As noted above, none of the cases cited by the State addressed the constitutionality of a state ban on write-in voting. *See supra* at 589. And, although the courts in those cases may have found the asserted state interests sufficiently compelling to justify restrictions in ballot access, none of those decisions addressed the issue this court faces today—that of the constitutionality of a complete ban on write-in voting.

▆▆▆▆ The State also argues that by prohibiting write-in voting while offering easy access to the ballot, Hawaii does no more than what other states do by regulating write-in voting. There is a major difference, however, between the states that limit write-in voting and Hawaii. Those states that limit write-in voting *allow* at least some form of write-in voting, while Hawaii completely prohibits any form of write-in voting.

▆▆▆▆ The State argues that a ban on write-in voting is merely a time, place and

manner restriction on speech. The State's argument is misplaced. The court recognizes that the State has broad power to regulate the time, place and manner of its elections. This broad power, however, does not eliminate the State's responsibility to observe the limits established by the First Amendment. *Eu v. San Francisco County Democratic Central Committee,* 489 U.S. 214, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989). Additionally, the ban on write-in voting is not merely a restriction on speech. It constitutes a total ban on the right to vote for the candidate of one's choice if that candidate is not listed on the ballot.

■ The State argues that if it must tolerate plaintiff's speech, which it characterizes as "spoiling" the ballot with a write-in vote, then it should not have to count and publish the vote. "A right to 'express [one's] feelings' without legal effect, however, is antithetical to the fundamental nature of the right to vote." *Canaan v. Abdelnour,* 40 Cal.3d 703, 221 Cal.Rptr. 468, 476–77, 710 P.2d 268, 276–77 (1985). As this court stated in its order of September 29, 1986, "Of course, it goes virtually without saying that the ability to cast a write-in vote includes a right to have that vote considered. To afford a voter the opportunity to write in the name of his candidate, and then to ignore that vote, is to offer a hollow right indeed." Order Granting Motion for Summary Judgment and for Permanent Injunction at 11. The State should be required to count any write-in votes cast.

■ The State argues that plaintiff has waived his right to argue the federal constitutional issue before this court, and that the Hawaii Supreme Court's decision in *Burdick v. Takushi,* 70 Haw. 498, 776 P.2d 824 (1989) has res judicata or collateral estoppel effect on this court. Defendants' arguments are completely without merit. The Hawaii Supreme Court did not decide the federal constitutional issue which is before this court today. The Hawaii Supreme Court merely decided that neither the Hawaii Constitution nor its statutory framework requires or permits Hawaii election officials to allow voters to cast write-in votes and to count and publish write-in votes.

Similarly, the Court of Appeals for the Ninth Circuit did not decide the federal constitutional question before this court today. The Ninth Circuit vacated this court's judgment on the ground that this court should have abstained from deciding the merits of plaintiff's constitutional challenge because it was not clear whether Hawaii's election laws prohibited write-in voting. It did not reach the merits of the federal constitutional issue.

Even if defendants raised arguments regarding the federal constitutional issue in their briefs before the Ninth Circuit Court of Appeals and the Hawaii Supreme Court, since these courts did not address the merits of the federal constitutional issue, this court fails to see how such action by *defendants* constitutes a waiver of *plaintiff's* right to argue the federal constitutional issue before this court, especially in light of the fact that this court retained jurisdiction over the federal constitutional question when it certified the questions to the Hawaii Supreme Court.

None of the State's additional arguments are persuasive upon this court. This court holds that Hawaii's absolute ban on write-in voting impermissibly infringes on plaintiff's federal constitutional rights and that no compelling state interests exist to justify this intrusion. Accordingly, the court GRANTS plaintiff's motion for summary judgment and for permanent injunctive relief.

### III. *Stay Pending Appeal*

The State has asked this court to stay the injunction pending appeal to the Court of Appeals for the Ninth Circuit. In light of the fact that it is unlikely that the Ninth Circuit will adjudicate this matter within the four months between the date of filing of this court's order and the primary election in September, this court recognizes the hardship and injury defendants will suffer if forced to provide for and count write-in ballots on this year's primary and general elections before a final resolution of this

issue has been rendered by the appellate court. This court is also aware that a prior appellate panel of the Ninth Circuit reversed this court's previous order denying defendants' motion for a stay, and it appears likely that the appellate court will follow the course of least resistance and take such action again if this court denies defendants' motion for stay. Without any diminution in the strength of this court's opinion regarding the merits of its position, and the court's belief that plaintiff continues to suffer enormous deprivation of his constitutional rights from Hawaii's absolute ban on write-in voting, this court is constrained to reluctantly GRANT defendants' conditional counter-motion for stay with the admonition that the parties pursue an expeditious appeal of this case.

IT IS SO ORDERED.