Frank F. FASI, Mayor of the City and County of Honolulu, Sharon Gibo, Mark Shiira, Kiyoshi Kimura, Plaintiffs,

v.

Benjamin CAYETANO, Lieutenant Governor, State of Hawaii, and Morris Takushi, Director of Elections, State of Hawaii, Defendants.

Civ. No. 90–00455 ACK.

United States District Court, D. Hawaii.

July 9, 1990.

William C. McCorriston, Mark J. Bennett, McCorriston, Miho & Miller, James J. Bickerton, Bickerton, Ramos–Saunders & Dang, Honolulu, Hawaii, for plaintiffs.

Warren Price, III, Atty. Gen., State of Hawaii, Charleen M. Aina, Gary Kim, Steven S. Michaels, Deputy Attys. Gen., Honolulu, Hawaii, for defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO SET ASIDE STAY

Before FONG, Chief Judge, and KAY and DAVID A. EZRA, District Judges.

The plaintiffs in this case are Frank F. Fasi, Mayor of the City and County of Honolulu, Sharon Gibo, Mark Shiira, and Kiyoshi Kimura, the latter three being voters in the State of Hawaii. On July 2, 1990, the court, sitting en banc, heard plaintiffs' motion for preliminary injunction. Plaintiffs seek an order from this court enjoining defendants Benjamin Cayetano, Lieutenant Governor of the State of Hawaii, and Morris Takushi, Director of Elections for the State of Hawaii, from enforcing Article II, section 7 of the Hawaii State Constitution (the "resign-to-run" pro-

vision), effectively requiring defendants to place Frank Fasi's name on the Republican primary ballot. In the alternative, plaintiffs ask the court to lift the stay imposed in *Burdick v. Takushi*, 737 F.Supp. 582 (D.Haw.1990) (Fong, C.J.) and require defendants to allow write-in voting during the 1990 primary and general elections for Governor of the State of Hawaii.

Plaintiffs allege that this court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article 1, section 10, clause 1 of the United States Constitution.

## BACKGROUND

Plaintiff Frank F. Fasi is the Mayor of the City and County of Honolulu. The remaining plaintiffs are voters who would vote for Mayor Fasi if his name appeared on the ballot or if they were allowed to write in Mayor Fasi's name as a write-in candidate.

On May 21, 1990, Mayor Fasi filed nomination papers with the Office of the Lieutenant Governor of the State of Hawaii to have his name placed on the 1990 Republican primary ballot for nomination as the Republican candidate for Governor of the State of Hawaii. Fasi's nomination papers were rejected because Fasi refused to resign from his office pursuant to Article II, section 7 of the Hawaii State Constitution. That provision (Hawaii's "resign-to-run" amendment) provides:

Any elected public officer shall resign from that office before being eligible as a candidate for another public office, if the term of the office sought begins before the end of the term of the office held.

Defendants contend that Mayor Fasi must resign by July 24, 1990 if he wants to be a candidate for election as Governor.

Plaintiffs concede and therefore do not challenge the constitutionality of the provision as written. Rather, plaintiffs contend that the resign-to-run provision, *as applied*

in conjunction with Hawaii's ban on write-in voting: (1) denies them their constitutional rights pursuant to the First and Fourteenth Amendments of the United States Constitution, (2) denies Mayor Fasi his right to equal protection under the law pursuant to the Fourteenth Amendment of the United States Constitution, and (3) violates Article I, section 10, clause 1 of the United States Constitution as a bill of attainder.

## I. JUSTICIABILITY—CASE OR CONTROVERSY

■ Before the court reaches the merits of this dispute, the court will address whether this case presents a justiciable case or controversy within the meaning of Article III of the United States Constitution. The court finds that there is such a justiciable case or controversy before it.

The controversy was created on May 23, 1990 when defendant Cayetano mailed Mayor Fasi a letter explaining why the Mayor's nomination papers would not be accepted. Mayor Fasi's nomination papers were rejected because Mayor Fasi refused to certify that he had or would resign from office pursuant to Article II, section 7. Given the defendants' stated position that, pursuant to the resign-to-run provision, Mayor Fasi's name will not be printed on the ballot during the September primary election for Governor unless he resigns from office before July 24, 1990, it cannot be said that the resign-to-run provision presents only a speculative or hypothetical obstacle to Mayor Fasi's eligibility for election. Therefore, the court finds that Mayor Fasi's allegations are sufficient to create a case or controversy.

## II. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### A. *Standard for Issuance of Preliminary Injunction*

■ The Ninth Circuit has developed a multi-pronged test for the propriety of preliminary injunctive relief. The moving party must establish either (1) a combination of probable success on the merits *and* ir-

reparable injury if denied the preliminary injunction, or (2) that he has raised serious questions on the merits *and* the balance of hardships tips sharply in his favor. *Hankins v. State of Hawaii*, 639 F.Supp. 1552, 1553–54 (D.Haw.1986) (Fong, C.J.), *citing Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

Accordingly, the court will review the merits of plaintiffs' constitutional claims, and then decide whether plaintiffs are irreparably injured or whether the balance of hardships tips sharply in plaintiffs' favor.

B. *First and Fourteenth Amendment Rights*

1. Standard of Review

■ It has not been settled in this Circuit whether this court should apply the traditional balancing test or a strict scrutiny standard of review when evaluating plaintiffs' First Amendment claims.[1] Plaintiffs argue that a strict scrutiny standard of review is appropriate in this case because two rights rather than one are at stake. In *Burdick*, only the voter's right to vote for the candidate of his choice was at issue. In this case, both Mayor Fasi's right to run for office and the right of voters to vote for a specific candidate of their choice are at stake. Plaintiffs further argue that the injury in this case is more substantial and more direct than the injury in *Burdick* since in this case, the candidate whom plaintiffs wish to vote for is known whereas in *Burdick*, the court protected the voter's right to vote for any candidate, known or unknown.

The injury resulting from Hawaii's ban on write-in voting has been redressed by this court's *Burdick* decision. Only the additional alleged injury to Mayor Fasi's interest in running for Governor without resigning has not been redressed. In *Burdick*, however, this court made clear that it was not as greatly concerned with the candidate's right to run for political office as it was with the voter's right to vote for the candidate of his choice. *See* Order Granting Plaintiff's Motion for Summary Judgment and Permanent Injunctive Relief filed May 10, 1990 at 10. Therefore, plaintiffs' argument that in this case the injury to plaintiffs' constitutional rights is greater than in *Burdick* because the resign-to-run amendment affects not only the voters' right to vote for Mayor Fasi, but also Mayor Fasi's right to be a candidate, is unpersuasive. Additionally, whether the candidate of the voter's choice is known or not, is not a factor affecting the court's decision on the importance of a voter's right of choice. Therefore, the fact that in this case, the candidate of the voter plaintiffs' choice is known does not make the injury to plaintiffs' constitutional right to vote more substantial than had the candidate not been known.

In *Burdick*, this court applied the balancing test promulgated by the United States Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), to determine the constitutional validity of Hawaii's ban on write-in voting. Under the *Anderson* court's balancing analysis:

... a court must first consider the character and magnitude of the asserted inju-

---

1. A review of the resign-to-run cases does not clarify which standard of review is appropriate under a First Amendment analysis because the two leading resign-to-run cases were decided primarily on Equal Protection grounds. *See Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (no discussion of applicable First Amendment standard of review); *Joyner v. Mofford*, 706 F.2d 1523 (9th Cir.1983) (resign-to-run law upheld against Qualifications Clause and Equal Protection challenges).

Similarly, a review of the write-in voting cases does not render much guidance. In *Canaan v.*

*Abdelnour*, 40 Cal.3d 703, 221 Cal.Rptr. 468, 710 P.2d 268 (1985), the California Supreme Court utilized the *Anderson* balancing test when evaluating San Diego's ban on write-in voting, explaining that strict scrutiny was more an Equal Protection standard of review. *Id.*, 221 Cal. Rptr. at 474, 710 P.2d at 274–75. In *Dixon v. Maryland State Administrative Board of Election Laws*, 878 F.2d 776 (4th Cir.1989), the Court of Appeals for the Fourth Circuit utilized both the *Anderson* balancing test and *Eu* strict scrutiny to evaluate the constitutionality of a Maryland statute requiring write-in candidates to pay a $150 filing fee.

ry to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570 (citations omitted). The *Anderson* balancing test has been applied in subsequent appellate decisions. *See Erum v. Cayetano*, 881 F.2d 689 (9th Cir.1989); *Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740 (10th Cir.1988).

This court also noted in *Burdick* that recent Supreme Court authority suggests that a stricter standard of review, requiring that the law be narrowly tailored to serve a compelling state interest, may be appropriate in certain ballot access cases.[2] *See* Order Granting Plaintiff's Motion for Summary Judgment and Preliminary Injunctive Relief at 7. In *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), the United States Supreme Court reviewed the constitutionality of a California election code provision that banned primary endorsements and imposed restrictions on the internal governance of political parties. In discussing the applicable standard of review, the *Eu* Court stated:

> To assess the constitutionality of a state election law, we first examine whether it burdens rights protected by the First and Fourteenth Amendments. If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances *a compelling state interest*, and is *narrowly tailored to serve that interest.*

*Id.*, 109 S.Ct. at 1019–20 (citations omitted).

After *Eu* was decided in February 1989, the Ninth Circuit Court of Appeals applied the *Anderson* balancing test rather than *Eu* strict scrutiny in a ballot access case. *See Erum v. Cayetano*, 881 F.2d 689, 692 (9th Cir.1989) (decided August 2, 1989) (Hawaii statute requiring non-partisan candidates to receive 10% of the votes cast in the primary election or at least as many votes as the least favored, successful partisan candidate in order to be placed on the general election ballot held constitutional). The *Erum* court reasoned that the *Anderson* balancing test was the appropriate standard of review because "[i]n ballot access cases, ... heightened scrutiny is not the rule." *Id.* at 692 n. 7. The court also noted that not since 1979 had the United States Supreme Court invoked strict scrutiny to decide a ballot access case. Since Mayor Fasi's challenge to Hawaii's resign-to-run law essentially is a ballot access case and the right to be a candidate is not a fundamental right, *see Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), the court will apply the *Anderson* balancing test as the appropriate standard of review.[3]

---

**2.** It is not clear which types of ballot access cases require strict scrutiny and which do not. There is no definitive rule that states when strict scrutiny rather than a balancing analysis is required.

**3.** In *Erum,* the Ninth Circuit attempted to reconcile *Anderson* and *Eu* by explaining that *Eu* strict scrutiny only applies when a court finds that a state election law impermissibly impinges upon the plaintiff's First and Fourteenth Amendment rights. 881 F.2d at 692 n. 7. The court's analysis of the character and magnitude of injury to plaintiffs' First and Fourteenth Amendment rights (see next section) brings it to

the conclusion that Hawaii's resign-to-run law does not impermissibly infringe upon plaintiffs' First and Fourteenth Amendment rights. Therefore, even under this analysis, strict scrutiny is not the appropriate standard of review.

The court is aware that the Ninth Circuit has not been consistent in its decisions regarding the applicable standard of review in First Amendment challenges to state election laws. In a case decided one week before *Erum,* the Ninth Circuit Court of Appeals applied both *Anderson* balancing and *Eu* strict scrutiny in the same case. *See Geary v. Renne,* 880 F.2d 1062, 1064 (9th Cir.1989) (upholding constitutionality

2. Character and Magnitude of Injury to Plaintiffs' First and Fourteenth Amendment Rights

Plaintiffs argue that the resign-to-run amendment in conjunction with the ban on write-in voting produces a significantly greater injury to plaintiffs' First and Fourteenth Amendment rights than either law would by itself. Plaintiffs argue that since the court has already held in *Burdick* that the character and magnitude of the burden caused by Hawaii's ban on write-in voting on plaintiff Burdick's constitutional rights is significantly great, the court should find that the character and magnitude of injury to plaintiffs Fasi, Gibo, Shiira, and Kimura's First and Fourteenth Amendment rights is also significantly great because not only is Mayor Fasi's name precluded from the printed ballot, but also plaintiffs are prohibited from voting for Mayor Fasi via write-in voting.

The court is not persuaded by plaintiffs' argument. Hawaii's ban on write-in voting does place a significant burden on voters' right to vote for the candidate of their choice, and this court has already ruled accordingly in *Burdick*. This does not necessarily mean, however, that the resign-to-run provision as written or as applied also unconstitutionally burdens the voters' right to vote and/or the candidate's right to run for office. On the contrary, there is ample authority suggesting that the resign-to-run provision is constitutional both with respect to Mayor Fasi and with respect to his supporters.

In 1982, the United States Supreme Court held that a Texas resign-to-run provision did not violate either the First Amendment or the Equal Protection Clause of the Fourteenth Amendment. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). In *Clements,* officials who wanted to run for higher office without resigning and voters who would vote for those officials challenged two provisions of the Texas Constitution as violating both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. One of these provisions, Article III, section 19, required an officeholder to complete his term of office before becoming eligible to serve in the Texas State Legislature. The other provision, Article XVI, section 65, the resign-to-run provision, provided for automatic resignation if certain state and city officials became candidates for another office. That provision, in relevant part, provided:

> If any of the officers named herein shall announce their candidacy, or shall in fact become a candidate, in any General, Special or Primary Election, for any office of profit or trust under the laws of this State or the United States other than the office then held, at any time when the unexpired term of the office then held shall exceed one (1) year, such announcement or such candidacy shall constitute an automatic resignation of the office then held.

*Id.* at 960, 102 S.Ct. at 2842.

The district court and the court of appeals held that both provisions violated the Equal Protection Clause of the Fourteenth Amendment. The United States Supreme Court, in a plurality opinion written by Justice William Rehnquist, reversed, holding that the two provisions did not violate either the First Amendment or the Equal Protection Clause because the resign-to-run amendment was rationally related to the state's legitimate interests in ensuring that officeholders do not abuse their positions or neglect their offices because of aspirations for higher office, and avoiding interim appointments and elections. In Justice Rehnquist's eyes, the resign-to-run provision was merely a waiting period, and accordingly was merely an insignificant burden on the right to candidacy.

This court notes that the plaintiffs in *Clements* were both officeholders and voters who would vote for those officeholders if they could run for office without resigning. Nevertheless, the *Clements* Court focused on the interests of the potential candidates, *not* on the rights of the voters to vote for these candidates. Similarly, although plaintiffs in this case are both May-

of California's ban on political party endorse-                    ments of nonpartisan candidates).

or Fasi, the candidate who wishes to run for office without resigning, and voters who would vote for Mayor Fasi if he could run, it is Mayor Fasi's interest in becoming a candidate without resigning from office which is the primary interest at issue.

The Ninth Circuit Court of Appeals has followed *Clements*, upholding the constitutionality of an Arizona resign-to-run provision against both Qualifications Clause and Equal Protection Clause challenges. *See Joyner v. Mofford*, 706 F.2d 1523, 1527 n. 2 (9th Cir.1983). In *Joyner*, a member of the county Board of Supervisors who wanted to run for United States House of Representatives without resigning challenged an Arizona constitutional provision that provided:

> Except during the final year of the term being served, no incumbent of a salaried elective office, whether holding by election or appointment, may offer himself for nomination or election to any salaried local, state or federal office.

*Id.* at 1526. The Ninth Circuit Court of Appeals found that the State's interests in (1) encouraging public officials to devote themselves exclusively to the duties of their office, (2) reducing the possibility of public subsidies for officials merely using their office as a stepping stone, (3) preventing abuse of office before and after election, and (4) protecting the expectations of the electorate voting a candidate into state office, were substantial and important and placed only a minimal burden on potential candidates. Accordingly, the appellate court found that the resign-to-run provision survived constitutional challenge under either a rational relation or a strict scrutiny standard of review. *Id.* at 1532.

▆ Plaintiffs seek to distinguish the *Clements* and *Joyner* decisions by arguing that in those two cases, write-in voting was an available alternative, while in this case, because this court has stayed its ruling on Hawaii's ban on write-in voting, write-in voting is not an available alternative. Plaintiffs argue that courts have usually upheld ballot access restrictions where write-in voting was an available alternative. *See, e.g., Storer v. Brown*, 415 U.S.

724, 736 n. 7, 94 S.Ct. 1274, 1282 n. 7, 39 L.Ed.2d 714 (1974), *Jenness v. Fortson*, 403 U.S. 431, 438, 91 S.Ct. 1970, 1974, 29 L.Ed.2d 554 (1971), *Unity Party v. Wallace*, 707 F.2d 59, 62 (2d Cir.1983).

Even if several courts have upheld ballot access restrictions while noting the availability of write-in voting as an alternative, at least two appellate courts have upheld ballot access restrictions even though write-in voting was *not* an available alternative. *See Rainbow Coalition of Oklahoma v. Oklahoma State Election Board*, 844 F.2d 740, 745 n. 8 (10th Cir.1988) (noting that availability or unavailability of write-in voting was not a significant distinction); *Hall v. Simcox*, 766 F.2d 1171, 1172 (7th Cir.1985) (write-in voting not an available alternative). Even more significant is the fact that recently the Ninth Circuit upheld a Hawaii ballot access restriction despite Hawaii's complete ban on write-in voting. *See Erum v. Cayetano*, 881 F.2d 689 (9th Cir.1989).

Neither the United States Supreme Court in *Clements* nor the Ninth Circuit Court of Appeals in *Joyner* made any mention of the availability or unavailability of write-in voting when they upheld the Texas and Arizona resign-to-run laws. One can infer from this lack of comment that the availability of write-in voting was not a factor that either court considered in reaching the conclusion that the resign-to-run provisions in question were constitutional. Therefore, the court finds that the availability or unavailability of write-in voting is not relevant in this case.

Defendants point out that even though write-in voting was generally an available alternative in both Texas and Arizona at the time of the *Clements* and *Joyner* decisions, write-in voting was *not* an available alternative for candidates subject to the resign-to-run provision. Although the applicable Arizona and Texas laws do not explicitly state that officials subject to the resign-to-run provision cannot become write-in candidates, the court's reading of those states' election laws has determined that if an officeholder in Texas or Arizona attempted to run as a write-in candidate without resigning, he would be removed

from office. Therefore, an official in Texas or Arizona could not avoid the resign-to-run requirement by running as a write-in candidate even though write-in voting in general was allowed in Arizona and Texas.[4]

■ Plaintiffs have attempted to link this court's *Burdick* decision with Mayor Fasi's resign-to-run challenge. The court finds, however, that the two issues—whether write-in voting should be allowed and whether Mayor Fasi must resign before running for Governor—are two separate and distinct issues.[5] This court has already decided in *Burdick* that write-in voting should be allowed. That decision is now on appeal before the Ninth Circuit. The only question left to decide regarding write-in voting is whether this court's stay in *Burdick* should be lifted. The stay issue is addressed separately in this order. This leaves only one substantive issue that this court must decide on the merits: whether Hawaii's resign-to-run law is constitutional. Under *Clements* and *Joyner*, the answer is clearly yes.

While recognizing the difficult position Mayor Fasi has been placed, the court is not persuaded that the character and magnitude of injury to either Mayor Fasi's nor the remaining plaintiffs' First and Fourteenth Amendment rights is constitutionally significant or that plaintiffs will suffer irreparable injury if this court does not grant the relief sought. As suggested by *Clements*, the Mayor can complete his term as Mayor, and then sit out two years from public service prior to running for governor. The court recognizes such delay is a hardship to the Mayor, but it is not an impermissible interference with Mayor Fasi's access to the ballot. *See Clements*, 457 U.S. at 968, 102 S.Ct. at 2846 (finding the imposition of a waiting period of two years to be an "insignificant interference with access to the ballot").

Mayor Fasi is forced, by application of the resign-to-run amendment, to make a choice. He can either resign his current office and run for Governor, or he can keep his current office and forego having his name placed on the ballot. In either case, the injury to Mayor Fasi should he choose not to resign is not irreparable. As Justice Rehnquist stated in *Clements*, the right to be a candidate for political office is not a fundamental right. 457 U.S. at 957, 102 S.Ct. at 2840.

### 3. The Interests Which the State Has Presented as Justifications for the Burden on Plaintiffs' Constitutional Rights

The State has listed at least six justifications for Hawaii's resign-to-run rule.

---

**4.** Under Texas law, to be eligible for a place on the list of write-in candidates, a candidate must make a declaration of write-in candidacy. Tex. Elec.Code Ann. § 146.023. A write-in candidate cannot be certified for placement on the list of write-in candidates if that candidate would otherwise be ineligible for the office. Tex.Elec. Code Ann. § 146.030. Under Article XVI, section 65 of the Texas Constitution, if certain state and county officials run for other office, this constitutes an automatic resignation from the office then held. Therefore, under Texas law, a state or county official who wanted to run for another office could become a write-in candidate, but would automatically be removed from his current office if he did so.

Arizona law provides that write-in candidates must file nomination papers prior to election day in order for his write-in votes to count. Ariz. Revised Stat. § 16–312, subd. A. Write-in filing procedures are the same as the filing procedures for regular candidates. Ariz. Revised Stat. § 16–312, subd. B. Article 22, section 18 of the Arizona Constitution provides that except during the final year of an officer's term, no incumbent may offer himself for nomination or election for another office. Accordingly, if an incumbent not in his final year of office tried to become a write-in candidate, he would be offering himself for nomination in violation of Arizona's resign-to-run law and would either be disqualified as a candidate or removed from his current office.

**5.** This court made clear in its *Burdick* decision that it was not as greatly concerned with the candidate's right to run for political office as with the voter's right to vote for the candidate of his choice. In this case, what is really at stake is Mayor Fasi's interest in running for a higher political office, and his desire not to have to resign from his current office in the process. The addition of the voters' right to vote for Mayor Fasi adds nothing to the Mayor's constitutional challenge to the resign-to-run amendment. Just as the United States Supreme Court ignored the voters' right to vote interest in *Clements* because the real issue was the official's interest in running for office, this court too will segregate Mayor Fasi's right to candidacy claim from the remaining plaintiffs' right to vote claim.

First, the resign-to-run law encourages elected public officials to devote themselves exclusively to the duties of their respective offices. Second, the resign-to-run amendment reduces the possibility of public subsidies for officials merely using public office as a "stepping stone" to higher office. Third, the provision prevents abuse of office before and after an election. Fourth, it protects the expectations of the electorate in voting a candidate into office. Fifth, the resign-to-run amendment ensures loyalty of public servants to their electorate. Finally, the rule minimizes the possibility of disruptions in public office and reduces the need for special elections.

The Ninth Circuit Court of Appeals has held that the first four of these justifications are "substantial, and reflect a *legitimate and compelling* state interest in orderly, consistent, and honest government." *Joyner v. Mofford*, 706 F.2d 1523, 1533 (9th Cir.1983) (emphasis added) (upholding Arizona's resign-to-run law). Additionally, a plurality of the United States Supreme Court has held that a state's interests in maintaining the integrity of its officeholders, ensuring that its officeholders do not abuse their positions nor neglect their duties because of aspirations for higher office, and discouraging its public officers from vacating their current terms of office to avoid the difficulties that accompany interim elections and appointments, are legitimate interests supporting a resign-to-run law. *Clements v. Fashing*, 457 U.S. 957, 968, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508 (1982).

Given the plurality opinion in *Clements* and the Ninth Circuit Court of Appeals' holding in *Joyner*, this court can reach no other conclusion than one that recognizes the legitimate, and even compelling, nature of the state's interests as approved by the

electorate and incorporated in the resign-to-run amendment to the State Constitution.

4. Balancing the Character and Magnitude of the Asserted Injury Imposed on Plaintiffs' First and Fourteenth Amendment Rights Against the State's Justifications for the Burden Imposed By Its Rule

Applying the *Anderson* balancing test, the court finds that the State of Hawaii's interests in ensuring loyalty of public officeholders to their electorate, preventing abuse of office before and after elections, and avoiding interim elections and appointments *heavily outweigh* the interest of prospective candidates in being able to run for higher office without resigning. Therefore, the court finds that Hawaii's resign-to-run law, as written and as applied, does not violate the First and Fourteenth Amendments to the United States Constitution.[6]

### C. *Equal Protection Clause*
#### 1. Standard of Review

The Equal Protection Clause allows the States considerable leeway to enact legislation that appears to affect similarly situated persons differently. *See Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Courts may assume that legislatures have acted constitutionally, and generally will uphold statutes as long as they are rationally related to a legitimate state interest. *Id.* A court may depart from the traditional rational relation standard of review only when the challenged statute burdens a suspect class or a fundamental constitutional right.

The right to be a candidate is not a fundamental right.[7] *Clements v. Fashing*, 457 U.S. 957, 968, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508 (1982). Additionally, a re-

---

**6.** The court notes that even under the strict scrutiny standard of review stated in *Eu,* the resign-to-run amendment survives constitutional scrutiny since it is narrowly tailored to serve legitimate and compelling state interests.

**7.** The plaintiffs might argue that the right to vote, which is a fundamental right, is abridged by the operation of Hawaii's resign-to-run

amendment and Hawaii's ban on write-in voting. As discussed above, when the United States Supreme Court was faced with similar arguments by plaintiff candidates and their supporters, a plurality of the Court focused on the issue of candidacy. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

sign-to-run law does not impose burdens on a suspect class. *Id.* State and county officials such as the Governor, Lieutenant Governor, Mayor, State Senators, City Councilmembers, and others subject to Hawaii's resign-to-run amendment are not members of a suspect class. Accordingly, courts have applied the rational relation test when determining the constitutionality of resign-to-run provisions. *See Clements v. Fashing,* 457 U.S. 957, 968, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508 (1982) (applying rational relation standard because interest in becoming a candidate is not a fundamental right and resign-to-run law does not burden a suspect classification, such as a classification based on wealth or a classification imposing a burden on independent candidates or minor political parties). *See also Joyner v. Mofford,* 706 F.2d 1523, 1532 n. 9 (9th Cir.1983) (noting that even though Arizona's resign-to-run law passed constitutional muster under either a rational relation or a strict scrutiny standard of review, rational relation was probably the appropriate standard of review).

■ Plaintiffs argue that this court need not apply a rational relation standard of review since *Clements* and *Joyner* involved challenges to resign-to-run laws as written, while plaintiffs are challenging Hawaii's resign-to-run law as applied. Plaintiffs cite no case authority supporting this argument,[8] and the court finds no reason to depart from the clear precedent established by *Clements* and *Joyner.*[9] Accordingly, the court will employ a rational relation standard of review when evaluating plaintiffs' equal protection challenge to Hawaii's resign-to-run amendment.

## 2. Whether the Allegedly Discriminatory Classifications are Rationally Related to a Legitimate State Interest

■ The Equal Protection Clause requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Equal protection under the law requires not only that the laws be equal on their face, but also that they be executed so as not to deny equality. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ In making an equal protection challenge, it is the plaintiff's burden to demonstrate a discrimination against him of some substance. *Clements v. Fashing,*

---

**8.** Indeed, in one of the primary cases plaintiffs rely on to show the difference between equal protection challenges to legislative rules themselves and challenges to administrative application or enforcement of such rules, the appellate court applied the rational relation standard of review. *See Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 933 (5th Cir. 1988).

**9.** Plaintiffs point out that the Fifth Circuit Court of Appeals has designed a test for evaluating Equal Protection challenges to regulatory or enforcement decisions. *See Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 934 (5th Cir.1988). If the decision is adjudicative (i.e. brought about through a state's administrative agencies), the court must focus on the *actual* motivations of the enforcers of a rule. If the decision is legislative (i.e. brought about through the state's legislature), then if the court can *hypothesize* a legitimate purpose for the classification, the classification is valid.

The appellate court in *Mahone* recognized that a regulatory decision can constitute a mixture of adjudicative and legislative action, and applied the legislative model even though the classification scheme in issue had been imposed by a zoning board, an administrative agency enforcing the law. *Id.* at 934. The appellate court reasoned that the zoning board's enormous discretionary powers and the fact that it was motivated by public interest rather than individual concerns were sufficient to invoke the legislative model. *Id.*

The court first notes that plaintiffs have not cited any United States Supreme Court or Ninth Circuit Court of Appeals authority that would be controlling on this court. Second, even if the court were to follow the Fifth Circuit's legislative vs. adjudicative analysis, the court would invoke the legislative model under which the challenged classification schemes would be upheld as long as the court could hypothesize any legitimate reason for the classification and find the classification scheme rationally related to this legitimate reason. This is because here, as in *Mahone,* the enforcers of Hawaii's resign-to-run rule (the Attorney General and the Hawaii Supreme Court) have enormous discretionary power and their primary concern in deciding whether the resign-to-run rule applies appears to be based on public interest concerns, not whether application of the rule would benefit the particular individuals involved.

457 U.S. 957, 967, 102 S.Ct. 2836, 2845, 73 L.Ed.2d 508 (1982). Only those classifications which are invidious, arbitrary, or irrational offend the Equal Protection Clause of the United States Constitution. *Id.*

■ Plaintiffs list the following as examples of arbitrary and discriminatory application of the resign-to-run amendment: (1) James Wakatsuki, a Democratic State Representative, was not required to resign from office when he was nominated to the Circuit Court bench, *see* Attorney General Opinion 80–2 (resign-to-run law only applicable to candidates for elective office, *not applicable to candidates for non-elective office*); (2) Democratic Congressman Cecil Heftel, who planned to run for Governor even though his Congressional term expired after the term for Governor began, could have received the benefit of Attorney General Opinion 86–4 in which the Attorney General opined that the resign-to-run law was *not applicable to federal officers seeking other offices*, if he had not chosen to voluntarily resign, *see* Attorney General Opinion 86–4; (3) Democratic State Senator Steve Cobb was not required to resign from state office in order to run for Congress, *see Cobb v. Hawaii*, 68 Haw. 564, 722 P.2d 1032 (1986) (resign-to-run amendment *not applicable to candidates for federal office*); (4) Democratic Councilwoman Patsy Mink was not required to resign her council seat in order to run for Governor, *see* Attorney General Opinion 86–17 (resign-to-run amendment *not applicable to officeholders whose successors would be elected at same election in which they are candidates*); and (5) Democratic State Senator Steve Cobb was not required to resign to run for a position on the neighborhood board, *see* Attorney General Opinion 88–7 (resign-to-run amendment *not applicable to candidates for neighborhood boards*).

■ Drafters and enforcers of a resign-to-run law may construe the law as being applicable to certain officeholders, and not applicable to others.[10] *See Clements v. Fashing*, 457 U.S. 957, 970–71, 102 S.Ct. 2836, 2847, 73 L.Ed.2d 508 (1982) (classification distinguishing between certain state officeholders and all other state officials in eligibility for election to state office is not suspect); *Joyner v. Mofford*, 706 F.2d 1523, 1531 n. 7 (9th Cir.1983) (classification distinguishing between elected state officeholders who want to run for another office before the final year of their term and all other persons is not suspect). This, in part, is because "[t]he Equal Protection Clause allows the State to regulate 'one step at a time, addressing itself to the phase of the problem which seems most acute.'" *Clements*, 457 U.S. at 969, 102 S.Ct. at 2847.

In this case, applying the resign-to-run amendment to state and county officeholders seeking elective offices, while not applying the amendment to candidates for non-elective or appointed office has a rational basis. The state's interests in avoiding abuse of office and ensuring that the officeholder devotes himself exclusively to his current duties are not as sharply implicated when the official has been nominated or appointed to a higher office. Not only is the Attorney General's opinion to exempt candidates for non-elective office or nominated positions from the resign-to-run rule supported and reasonably related to an important state interest; plaintiff Fasi is not seeking nomination to appointive office, and therefore Mayor Fasi is not "similarly situated" with Representative Wakatsuki.

It also seems reasonable to exempt federal officials and those seeking federal office from the state's resign-to-run law. State regulation of federal office may violate the Qualifications Clause of the United States Constitution. *See* U.S. Const. art. I, § 2, cl. 2. These classifications exempting federal officials and candidates for federal

---

**10.** Plaintiffs argue that classifications drawn by legislative action are permissible, but classifications drawn by executive and judicial action are impermissible. *See* Plaintiffs' Reply Memorandum at 12–13. There is no case authority supporting this proposition.

The Equal Protection Clause permits classifications to be drawn by either drafters (e.g. the legislature) or enforcers (e.g. the judiciary or executive) as long as those classifications are rationally related to a legitimate state interest. *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 934 (5th Cir.1988).

office from application of the resign-to-run rule advances a reasonable and legitimate state end in attempting to avoid conflict between state and federal constitutional objectives. Furthermore, the facts in Attorney General Opinion no. 86–4 and *Cobb v. State of Hawaii, supra,* are distinguishable from the facts in this case since plaintiff Fasi is neither a federal officer nor is he seeking federal office. Therefore, Mayor Fasi is not "similarly situated", for equal protection purposes, with the officeholders in the above two cases.

Even the classification created by Attorney General Opinion 86–17, which opined that Councilwoman Patsy Mink was not required to resign from her council seat in order to run for Governor because the resign-to-run provision does not apply to officeholders whose successors would be elected at the same election in which the officeholder is a candidate (i.e. resign-to-run provision not applicable where the officeholder's current term of office's expiration date *closely overlaps* with the commencement date of the sought after office), appears to have a rational basis. This court notes that it is not reviewing the legal correctness of the Attorney General's opinion, but instead is focusing on whether the application of the provision in this case is arbitrary in light of past applications of the rule.

The court finds that there was an arguable basis for the Attorney General's conclusion not to apply Article II, section 7 to Councilmember Mink. This is because one of the evils sought to be prevented by the resign-to-run amendment was an officeholder "abus[ing] his elected office as a safe haven from which to make political forays and return if he proves unsuccessful." *See* Attorney General Opinion No. 86–17. In cases where the officeholder runs for an office with closely overlapping commencement and termination dates, the danger of abuse of office that the resign-to-run amendment was designed to prevent is not as great a concern because the officeholder cannot use her current office as a safe haven to return to if she loses the election. Therefore, the court finds that

this classification scheme was not arbitrary nor unreasonable.

Additionally, Mayor Fasi's case is different from the facts involved with Councilmember Mink. Unlike the expiration of Mrs. Mink's council term, Mayor Fasi's mayoral term will not coterminously expire during the relevant transition period of the gubernatorial inauguration. Thus, Mayor Fasi is not "similarly situated" with Councilmember Mink.

The final classification scheme complained of concerns State Senator Steve Cobb's question whether Article II, section 7 applies to candidates for neighborhood boards. Given the advisory nature of neighborhood boards, it cannot be said that the State of Hawaii's distinction between classifications in this instance is arbitrary or unreasonable. Additionally, it appears reasonable to exempt candidates for neighborhood board positions because members of neighborhood boards "do not exercise a portion of the State's sovereign power" and therefore are not considered public officers subject to the resign-to-run amendment. *See* Attorney General Opinion 88–7. Moreover, plaintiff Fasi is not a candidate for a neighborhood board position, and therefore he is not "similarly situated" with a candidate for a neighborhood board position.

Plaintiffs have failed to demonstrate any "invidious discrimination" applied against plaintiff Fasi. Moreover, the classification scheme in issue appears to be rationally related to legitimate state interests. Accordingly, the court finds that Hawaii's resign-to-run amendment, as written and as applied, does not violate the Equal Protection Clause.

### D. *Bill of Attainder*

Plaintiffs lastly argue that Article II, section 7 constitutes a bill of attainder prohibited by Article I, section 10 of the United States Constitution. The court finds no merit in plaintiffs' argument. Article I, section 10 provides: "No State shall ... pass any Bill of Attainder ..." *See United States v. Brown,* 381 U.S. 437, 441–449, 85 S.Ct. 1707, 1711–15, 14 L.Ed.2d 484 (1965) (discussing historical background of

bills of attainder). A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Admin. of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977).

██ The critical inquiry, in determining whether a regulation constitutes an unconstitutional bill of attainder, is whether the regulation "inflicts punishment" within the meaning of Article I, section 10. *Id.* A court should apply a "functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Id.* at 475–76, 97 S.Ct. at 2806–07.

██ Applying this functional test to the facts of this case, the court summarily rejects plaintiffs' bill of attainder challenge. The court finds that the burdens to plaintiffs' constitutional rights are minimal and that the resign-to-run provision furthers several nonpunitive legislative purposes. Accordingly, the resign-to-run amendment does not constitute an impermissible bill of attainder.

██ In light of the above discussion of the merits of plaintiffs' constitutional challenges to Hawaii's resign-to-run amendment, the court DENIES plaintiffs' motion for preliminary injunction because plaintiffs have failed to meet their burden of proving either (1) a combination of probable success on the merits and irreparable injury, or (2) serious questions on the merits and that the balance of hardships tips sharply in their favor.

First, it is highly unlikely that plaintiffs will prevail on the merits given the *Clements* and *Joyner* decisions. Second, plaintiffs will not be irreparably injured if the relief sought (a declaration that the resign-to-run amendment is unconstitutional or an order requiring defendants to allow write-in voting during this year's primary and general elections for Governor) is not granted. Although the court recognizes the harshness of the application of the law

upon Mayor Fasi, and consequently upon the voters of this State who will be deprived of their opportunity to vote for him in the upcoming primary and general election, still the court cannot find that the resign-to-run provision impermissibly infringes on any fundamental constitutional right.

Arguably, plaintiffs have raised serious questions on the merits, but the court DENIES preliminary injunctive relief since it appears that the balance of hardships does not tip sharply in plaintiffs' favor. The State has raised several legitimate justifications supporting the resign-to-run amendment while plaintiffs have only demonstrated an infringement on Mayor Fasi's right to run for office, which appellate courts have found not to be a fundamental constitutional right.

## III. PLAINTIFFS' ALTERNATIVE REQUEST TO SET ASIDE THE STAY IMPOSED IN BURDICK

If the court finds that the resign-to-run amendment is constitutional as applied, then plaintiffs ask the court to lift the stay it imposed in its *Burdick* decision and require defendants to allow write-in voting during the 1990 primary and general elections for Governor of the State of Hawaii.

██ It is not within this court's power to lift the stay imposed in the *Burdick* case because that case is now on appeal to the Court of Appeals for the Ninth Circuit. This court takes judicial notice that a notice of appeal was filed by the defendants in *Burdick* on June 6, 1990 and June 12, 1990.

Even if the *Burdick* case were not on appeal, this court would not be inclined to set aside its stay. Plaintiffs waited until approximately six weeks prior to July 24, 1990, the filing cut-off date, to file this action. The printing of the ballots for the September 22, 1990 primary is set to commence on July 28, 1990. Because of the short interval of time between the time this motion is likely to be decided and the primary and the general election, integrating write-in voting into Hawaii's election schedule would likely be difficult and costly.

Defendants say they have not allocated monies for write-in voting for this election.

More importantly, the original reasons why this court granted defendants' motion for a stay pending appeal in *Burdick* still remain valid. It is unlikely that the Ninth Circuit will adjudicate this matter before the primary election in September, and therefore defendants will suffer hardship and injury if forced to provide for and count write-in ballots on this year's primary and general elections before a final resolution of this issue has been rendered by the appellate court. Additionally, the Ninth Circuit reversed this court's previous order denying a motion to stay and will likely take such action again if this court sets aside the stay imposed in *Burdick* prior to appellate consideration of that case. *See* Ninth Circuit Court of Appeals' Order Granting Appellants' Emergency Motion for Stay filed October 15, 1986. Accordingly, plaintiffs' request that the stay in *Burdick* be set aside is DENIED.

## CONCLUSION

This order should not be interpreted as a statement of this court on the wisdom of the challenged constitutional provision. The relief sought by Mayor Fasi lies not with this court, but rather with the Legislature or the electorate to address this situation.

For all the reasons stated above, this court DENIES plaintiffs' motion for preliminary injunction and plaintiffs' motion to set aside stay.