CLEVELAND ET AL. *v.* PALIN ET AL.

[No. 26,429. Filed January 8, 1936.]

*A. T. Livengood,* for appellants.

*Robert H. McKinney, Lindley P. Little* and *McCabe & McCabe,* for appellees.

TREANOR, J.—This is an appeal from a judgment of the Fountain Circuit Court rendered in an election contest suit. The election out of which the contest arose was held in the Town of Mellott on November 7, 1933. Five separate election contest suits were brought for the offices of town clerk, town treasurer, and the three offices of town trustees. Recount commissioners certified that each of the contestors, appellees here, had received a majority of the votes cast at the election for their respective offices. The suits were consolidated for trial, finding, and judgment. Appellants requested the court, in writing, to make a special finding of facts and to state conclusions of law thereon, which request was granted. An agreed statement of facts was submitted as the evidence in the trial court. On December 20, 1933, being the 72nd judicial day of the December term

of the Fountain Circuit Court, the trial court made its special finding of facts and stated its conclusions of law, to which conclusions of law appellants thereupon excepted. Judgment was rendered in favor of appellees, contestors below, that each had been duly elected to the office for which he was a candidate.

On January 15, 1934, being the 13th judicial day of the January term, 1934, appellants requested the trial court to fix the amount of the appeal bond. This the trial court refused to do and appellants excepted to the ruling.

Errors assigned upon appeal are that the court erred (1) in each of its conclusions of law stated upon the special findings of facts and (2) in overruling appellants' motion to fix and determine the amounts of the appeal bonds.

Appellees filed a motion to dismiss this appeal upon the grounds (a) that exceptions to conclusions of law on special findings of facts, based upon an agreed statement of facts, do not present any question on appeal, and (b) that no appeal was ever prayed by the appellants or granted by the lower court.

We shall first consider the motion to dismiss. In support of the first ground for dismissal appellees cite the cases of *Western Union Tel. Co.* v. *Frank* (1882), 85 Ind. 480; *Zeller* v. *City of Crawfordsville* (1883), 90 Ind. 262; *City of Terre Haute* v. *Burns* (1918), 69 Ind. App. 7, 116 N. E. 604; *Henes* v. *Henes* (1892), 5 Ind. App. 100, 31 N. E. 832; and *Reddick* v. *Board, etc.* (1896), 14 Ind. App. 598, 41 N. E. 834, 43 N. E. 238. There is support for appellees' contention in *Western Union, etc.* v. *Frank, supra.* The opinion in that case assumes that a purported special finding of facts which is based upon an agreed statement of facts, can amount only to a general finding; and, consequently, that such a finding cannot be the basis of conclusions of

law. The other cases, however, do not support appellees' position.

In *Zellers* v. *City of Crawfordsville, supra,* an agreed statement was used merely as evidence; but it was pointed out that the proceeding was not had under the statute providing for a request for special finding and conclusions of law. The opinion did not state whether a request for a special finding had been made.

In *City of Terre Haute* v. *Burns, supra,* the evidence was undisputed, and the parties filed with the trial court a complete statement of the evidence. A special finding of facts was made at the request of a party. Appellee contended on appeal that no question could be presented by exceptions to the conclusions of law because the parties agreed to the facts. The Appellate Court recognized that no question is presented on appeal by exceptions to conclusions of law based upon an agreed statement of facts, citing *Western Union Tel. Co.* v. *Frank, supra;* but appellee's contention was rejected upon the ground that a submission of the cause upon an agreed statement of the evidence would not prevent the court's making a special finding of facts at the request of a party.

In *Henes* v. *Henes, supra,* the record failed to show that a special finding of facts had been requested or made, and the court correctly held that the agreed statement of facts could not be considered as a special finding of facts.

In *Reddick* v. *Board, etc., supra,* it was held that the use of an agreed statement of facts as evidence does not make of such statement a special finding of facts and does not incorporate such statement into the record without a bill of exceptions or order of court. This is correct, but obviously does not mean that a special finding cannot be made by the trial court, upon request

of a party, when the only evidence is in the form of an agreed statement of facts.

It is clear that the instant case was not submitted to the trial court as an agreed case upon an agreed statement of facts, made out and signed by the parties, as provided for in §2-2201, Burns Ind. St. Ann. 1933, Acts 1881 (Sp. Sess.), ch. 38, §456, p. 240. This court has recognized a distinction between the trial of an agreed case and the hearing of evidence upon an agreed statement of facts.[1] Where there is not a compliance with the statutory requirements for the submission of an agreed case (§2-2201, Burns, etc., *supra*) the effect of submitting the evidence in the form of an agreed statement of facts is the same as a stipulation between the parties as to what constitutes the evidence in the case, and the purpose is to simplify the trial by obviating the necessity of making proof.[2] Since there is no statutory provision which precludes a trial court from basing a special finding of facts upon an agreed statement of facts, we see no reason for holding that the submission of the evidence in the form of an agreed statement of facts prevents the court from making a special finding of facts, upon request of a party, and stating conclusions of law thereon. The purpose of an agreed statement of facts is to facilitate the trial of a cause; the purpose of

1. "An agreed state of facts is simply the result of an agreement of the parties as to what the evidence in the case will prove. Many cases recognize and enforce the difference between an agreed case and a case where the evidence is embodied in an agreement as to the facts." *Witz* v. *Dale* (1891), 129 Ind. 120, 27 N. E. 498.

2. This was pointed out in the case of *Struble-Werneke Motor Co.* v. *Metropolitan Sec. Corp.* (1931), 93 Ind. App. 416, 421, 178 N. E. 460, where the stipulation was not in proper form to present an "agreed case" under §2-2201, *supra*: "At most, the stipulation constitutes simply the evidence in the case, and nothing more. In *Reddick* v. *Board* (*supra*) in considering a stipulation similar to the one in the instant case, it was said: 'When the parties agree upon the facts, as in this case, they do nothing more than to simplify the trial by obviating the necessity for making proof, and such facts when agreed to, do not constitute a special finding of facts, and an exception to a conclusion of law based upon such facts presents no question on appeal to this court.'"

the statutory provision for a special finding of facts is to facilitate review of the cause in case of an appeal.[3] From the standpoint of a reviewing court it is not material whether the trial court's special finding of facts is the court's inference from a mass of evidentiary facts presented in the ordinary course of trial, or an inference from an agreed statement of facts.

It was proper for the trial court to make a special finding of facts, upon request of a party, and to state its conclusions of law thereon. Such conclusions of law, properly excepted to, may be assigned as error upon appeal.

In support of the second ground for dismissal appellees point out that appellants did not take any steps toward perfecting an appeal at the term at which judgment was rendered and did not, at any time, pray an appeal to the trial court and that the trial court did not allow an appeal. The proceedings in the trial court were brought and conducted under Acts 1933, ch. 242, p. 1098, entitled "An Act relating to the contest of general and primary elections for district, county, township and municipal offices." The following language is contained in §7 of the act:

"An appeal from the final determination of the court may be taken to the supreme court as in other cases."

Appeals generally are provided for by §2-3206, Burns, etc., 1933, Acts 1881 (Spec. Sess.), ch. 38, §635, p. 240; Acts 1933, ch. 106, §1, p. 694, in the following language:

3. " 'The office of a special finding is not to state the evidentiary facts, that is, such facts as prove the existence of the ultimate or inferential facts. Such evidentiary and probative facts are to be considered by the court in determining the existence of the substantive, ultimate facts, but their statement in a special finding is improper.' The legislative purpose in making provision for special findings of fact, with conclusions of law thereon, was manifestly to make the case easily reviewable by setting forth the exact grounds on which the judgment rests." *Horn* v. *Lupton* (1914), 182 Ind. 355, 361, 105 N. E. 237, 106 N. E. 708.

"After the close of the term at which the judgment is rendered, an appeal may be taken by the service of a notice in writing on the adverse party, or his attorney, and also on the clerk of the court in which the proceedings were had, stating the appeal from the judgment or some specific part thereof; or such appeals may be taken by procuring from the clerk of the court a transcript of the record, and proceeding in the suit, or so much thereof as is embraced in the appeal, and filing the same in the office of the clerk of the supreme court, who shall indorse thereon the time of filing, and issue notice of the appeal to the appellee. The appellee, or appellees, shall be served with such notice of appeal by the sheriff of the supreme court, or by such other officer as is authorized by law to serve the same, and such service shall be made in the same manner as a summons or other process, is required by law to be served upon any such appellee in civil actions filed in the circuit courts of this state."

It appears that appellants brought this appeal under the provision of §2-3206, *supra*, by filing their transcript with the clerk of the Supreme Court and causing notice issued by such clerk to be served upon appellees. The appeal was properly perfected without a prayer for appeal addressed to the trial court and without an order of that court allowing an appeal.

Appellees' motion to dismiss this appeal is overruled.

Appellants' first assignment of error is that the trial court erred "in its conclusions of law, and each of them, separately and severally stated upon the special finding of facts." The conclusions of law are as follows:

(1) The Court concludes that section Ten of the Acts of the General Assembly of 1891, page 130, is the law governing in this cause.

(2) That the paster ballot so used in this election was a legal ballot under the provisions of such section ten (10).

It appears from the agreed statement of facts that the election board printed a ballot bearing only the

names of appellants, who were the candidates of the Democratic party; but that a majority of the electors who participated in the election expressed their preference for the appellees by means of "paster" ballots. The precinct election board refused to count any of the "paster" ballots and the town election board declared the appellants elected and issued certificates of election to each of them. The recount commissioners counted all the ballots and declared the appellees elected.

It is conceded that the appellees received a majority of the votes cast at the election if those who voted "paster" ballots cast legal ballots.

In 1889 the General Assembly enacted a comprehensive election law which contained, among others, provisions for the nomination of candidates by party conventions and other groups, and for the printing of ballots containing the names of persons so nominated to be used in elections. The act of 1889 (ch. 87, p. 157) contained no provision whereby a voter might indicate as his choice any person whose name did not appear upon the official printed ballot at the time it was handed to the voter. By amendment of the act of 1889, the General Assembly, in 1891,[4] prescribed a method of using a "paster" ballot of the voter's own "selection or preparation" whereby he might vote for a person or persons whose names do not appear upon the official printed ballot. The provisions of the act of 1889 and the amending act of 1891 were applicable to any election held at the time of holding general elections, and by §65 of the act of 1889, and §14 of the act of 1891, city and town elections held "at any time other than a time of a general election" were required to be held "in conformity with the provisions" of those acts. It is clear that, un-

4. §29-1126, Burns Ind. St. Ann. 1933; Acts 1891, ch. 94, §10, p. 124, amending Acts 1889, ch. 87, §46, p. 157.

less repealed, the paster ballot law, as contained in the act of 1891, is applicable to the election involved in this appeal.

There is no contention that the paster ballots counted for appellees were not prepared and used in conformity with the act; therefore, if the act remains unrepealed, judgment correctly was rendered for appellees.

There has been no legislative enactment expressly repealing the paster ballot act, but it is insisted that repeal by implication has been effected by the passage of other acts relating to elections. If the provisions of such other acts are in irreconcilable conflict with the paster ballot law, the latter may be said to have been repealed by implication; but if they can be construed together so as to give effect to both the paster ballot law and subsequent election laws, there has been no repeal by implication.

In 1897 the General Assembly passed an act[5] entitled "An Act providing for the printing of ballots, the form thereof, the manner of countersigning the ballots, the manner of voting, counting and protesting the same, the manner of making and filing and accepting nominations and filling resignations . . . and repealing all laws in conflict herewith." By §1 of the act election boards were required to "cause the names of all candidates of their respective jurisdictions to be printed on one ballot, all nominations of any party or group of petitioners being placed under the title and device of such party or petitioners as designated by them in their certificate or petition, or if none be designated, under some suitable title or device." The same section designated the color of ballots and the position of titles, devices, and lists of candidates of parties or groups of petitioners upon the ballots. Other sections of the act permitted a candidate to choose as to whether his name should appear on the ballot

5. Acts 1897, ch. 41, p. 49.

as the nominee of a convention or a group of petitioners, if nominated by both; set out the procedure to be followed by the voter and the precinct election board at the time of voting and counting the ballots, and repealed "all laws and parts of laws in conflict" therewith.

It is clear that this act dealt with the printing and voting of ballots containing the names of persons nominated by parties or groups of petitioners, and that it did not purport to affect the existing method of indicating a choice for a person whose name did not appear upon the ballot as printed by the proper election board. Not only is there a lack of conflict between the provisions of the act of 1897 and the paster ballot law of 1891, but the two laws operate together to give effect to our public policy of permitting the voters of the State to express a free and intelligent choice in selecting public officials.[6] The result is that the voters have a choice between voting for persons who are candidates for office as representatives of parties or groups and for persons whom the individual voters believe are better qualified to fill the office in question. Whatever the practical value of the latter may be, it affords an opportunity for the realization of the often expressed but seldom realized maxim that the office should seek the man rather than the man the office.

Amendments to §1, Acts 1897, *supra,* were made by Acts 1919, ch. 86, p. 466, and Acts 1933, ch. 92, p. 660. These dealt with the order of lists of candidates upon the printed ballot and the placing of the state ticket upon a separate printed ballot, respectively, and neither amendment is in conflict with the paster ballot law.

That the General Assembly understood that the paster ballot law remained in effect is indicated by the language contained in two statutes enacted after the passage of the 1897 act, *supra.* In §3, Acts 1901, ch. 260, p. 591 (§29-2403, Burns, etc., 1933), which deals with the construction of voting machines, it was provided as follows:

6. *Jones* v. *State* (1899), 153 Ind. 440, 451, 55 N. E. 229.

"It (voting machine) shall also be so constructed as that any elector may by means of irregular ballots or otherwise vote for any person for any office although such person may not have been nominated by any party and his name may not appear on such machine; and that when a person is voted for for any such office, when name does not appear on the machine, the elector can not vote for any name on the machine for the same office."

And the following is contained in §10½ of the same act:

"Ballots voted for any person whose name does not appear on the ballot label on the machine as a candidate for office, are herein referred to as irregular ballots. . . . no irregular ballot shall be voted for any person for any office whose name appears on the ballot label on the front of the machine as a candidate for that office; . . ." (§29-2413, Burns, etc., 1933).

In passing an act in 1915 providing for primary elections and conventions by political parties, and again in 1917 when amending the 1915 act, the General Assembly used the following language:

". . . nothing in this act contained shall prevent any individual voter at any general election from using the paster ballot as now provided by law." Acts 1915, ch. 105, p. 359, §8; Acts 1917, ch. 117, p. 354, §5; §29-508, Burns, etc., 1933.

It is also insisted that ch. 198, Acts 1921, p. 514, which, according to its title, requires a declaration of candidacy to be filed by independent candidates at least thirty days before a primary election, is in conflict with the paster ballot law and accomplishes its repeal. However, the language of the act[7] itself indicates that it deals with the printing of the names of such candidates upon the official ballot and is not in conflict with the provisions of the paster ballot law.

We hold that §10 of Acts of 1891, ch. 94, p. 124,

7. Also Acts 1925, ch. 181, p. 440; §29-1006, Burns, etc., 1933.

*supra,* has not been repealed, either expressly or by implication.

Appellants' second assignment of error is that the court erred in overruling appellants' motion to fix and determine the amounts of the appeal bonds. While §8 of ch. 242, Acts of 1933, under which the proceedings in the trial court were conducted, provides that "if the losing party appeal from such judgment" and be already in office and "shall execute an appeal bond in a sum to be fixed by the court, sufficient to cover the emoluments of the office, . . . within thirty days from the date of such judgment, his rights in and to such office shall not be disturbed pending such appeal," this section is to be construed together with §7 of the act which provides that an "appeal from the final determination of the court may be taken to the supreme court as in other cases." The effect of the two sections is not to remove the necessity of having the penalty of the appeal bond fixed and sureties approved by the trial court at the term at which judgment is rendered, but to impose the additional requirement that such appeal bond shall be filed "within thirty days from the date of such judgment," instead of within time fixed by the trial court, in order to entitle the appellant to remain undisturbed in office pending appeal. Appellants did not ask that the penalty of the appeal bond be fixed until the next term after the term at which judgment was rendered.

But even if the trial court had been in error, the remedy of appellants was to apply to this court to compel him to perform his duty.

The action of the trial court in this matter could not be the basis of an assignment of error in this court.

The trial court did not err in its conclusions of law.

Judgment affirmed.