Ron **PAUL, Andre Marrou, Stephen W. Dillon, Steve Dasbach, Barbara Bourland, Steve Springer, Rex F. May, Kenneth A. Bisson, Karen D. Benson, J. Nadine Dillon, David Benson, Andrew C. Maternowski, and all other Indiana registered voters similarly situated, Plaintiffs,**

v.

The **STATE OF INDIANA ELECTION BOARD, and its members, Governor Robert D. Orr, Donald B. Cox, Kevin J. Butler, John R. Whitaker, Evan Bayh, Secretary of State of Indiana, Defendants.**

No. IP 88–982–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 25, 1990.

---

**14.** See footnote 12, *supra.*

Andrew C. Maternowski, Stephen W. Dillon, Dillon Law Office, Indianapolis, Ind., for plaintiffs.

Kimberlie Antrim Forgey, Robert Speal, Deputy Attys. Gen., Office of the Attorney General, Indianapolis, Ind., for defendants.

## ENTRY

BARKER, District Judge.

On August 23, 1988, the plaintiffs filed a class action complaint seeking declaratory and injunctive relief to prevent the State of Indiana and its officers from enforcing certain election laws. The suit is brought under 42 U.S.C. § 1983, and this court has jurisdiction pursuant to 28 U.S.C. § 1331. This matter is presently before the court on the parties' cross motions for summary judgment. Although the plaintiffs have challenged the validity of several Indiana election laws, the only issue presently before the court is whether the First and Fourteenth amendments of the United States Constitution require Indiana to per-

**618**

mit and report write-in votes on election ballots.[1]

■ Federal Rule of Civil Procedure 23(c)(1) directs a district court to rule on the issue of class certification "as soon as practicable." Therefore a court must resolve such issues before it addresses dispositive motions. *Bieneman v. City of Chicago*, 838 F.2d 962 (7th Cir.1988); *Hickey v. Duffy*, 827 F.2d 234 (7th Cir.1987); *Premier Elec. Const. Co. v. N.E.C.A., Inc.*, 814 F.2d 358 (7th Cir.1987). In the present case, the plaintiffs have complied with the requirements of FRCP 23(b)(3), as well as with Local Rule 8. The plaintiffs have done nothing to advance their request for class certification, but the defendants have done nothing to oppose it.

■ One may well question the need to bring this complaint as a class action, as a ruling on the constitutionality of Indiana's election laws will inevitably apply to all potential candidates, registered voters, and voters-to-be. But in the Seventh Circuit, "it is clear that, if the prerequisites and conditions of Rule 23 have been met, a court may not deny class status because there is no 'need' for it." *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir.1976). Even if certification is unnecessary for practical reasons, certification may not be denied if Rule 23 is satisfied. *Vegara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978).

The court finds that the plaintiffs have satisfied all of the Rule 23 conditions for a class action, and hereby CERTIFIES the plaintiff class, which consists of candidates and potential candidates for public office[2], and qualified voters and potential qualified voters in the State of Indiana.

Finally, it may be helpful to specify the exact constitutional provisions that control the present analysis. Previous election law challenges have invoked the Equal Protection Clause of the Fourteenth Amendment.[3] While this court relies substantially upon such cases, the present case is governed directly by the First Amendment. *See Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989); *Anderson v. Celebrezze*, 460 U.S. 780, 786 n. 7, 103 S.Ct. 1564, 1569 n. 7, 75 L.Ed.2d 547 (1983).

### I. *Pullman Abstention*

Although the defendants have not argued the point, this court deems it advisable to address the issue of *Pullman* abstention.[4] *Cf. Serpas v. Schmidt*, 827 F.2d

---

1. Shortly after this case was filed, Indiana's voters elected a new Governor whose political affiliation differed from that of the previous Governor. Because States generally have wide powers to regulate elections under Art. I § 4, and Art. II, § 1, cl. 2 of the Constitution, this court preferred to give the New Administration and the new legislature an opportunity to address the issues presented in this case. The new Administration, however, still argues that Indiana's election laws are constitutional, and two legislative sessions have passed without any changes in the election laws. As both the executive and legislative branches have stood by the current laws, it is now this court's responsibility to determine the constitutionality of those laws.

2. In their complaint, the plaintiffs seek relief with respect to local, state-wide, and national elections. Although a State's interest in regulating national elections is far less strong than its interest in regulating local or state-wide elections, *Anderson v. Celebrezze*, 460 U.S. 780, 804, 103 S.Ct. 1564, 1578, 75 L.Ed.2d 547 (1983), neither party has crafted arguments that distinguish between these different types of elections, or the different constitutional rights or State's interests that may be involved. For the purposes of this Entry the court will treat the dispute over write-in voting as applying to all types of elections.

3. *See, e.g., Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

4. In a case closely analogous to the case at bar, the Ninth Circuit vacated a district court's ruling enjoining Hawaii to permit write-in voting. That court held that *Pullman* abstention was appropriate because a state court construction of Hawaii's election laws might have obviated the need to reach the federal constitutional question. *See Burdick v. Takushi*, 846 F.2d 587 (9th Cir.1988). The Ninth Circuit certified several questions to the Hawaii Supreme Court, which ruled that Hawaii's Constitution did not require Hawaii to permit write-in voting, and that Hawaiian election laws did not permit write-in voting. When the case returned to federal district court, the court again ruled that

23, 27 n. 2 (7th Cir.1987); *Waldron v. McAtee,* 723 F.2d 1348, 1351 (7th Cir.1983). Under the doctrine of *Pullman* abstention, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Abstention prevents "unnecessary adjudication of federal questions" *id.,* and avoids "needless friction with state policies." *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

■ Federal courts have a duty under Article III of the United States Constitution to adjudicate properly presented federal claims. Courts cannot shirk this responsibility simply because the issues involved are unpopular or politically sensitive. For this reason, abstention remains the exception, not the rule. *New Orleans Public Serv. v. Council of New Orleans,* — U.S. ——, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989); *City of Houston, Texas v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 2512, 96 L.Ed.2d 398 (1987) ("Abstention is, of course, the exception and not the rule"); *Midkiff, supra,* 104 S.Ct. at 2327; *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).[5]

■ A majority of the Supreme Court recently noted that "we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment," because "abstention ... is inappro-

priate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression." *City of Houston, supra,* 107 S.Ct. at 2512–13, quoting *Dombrowski v. Pfister,* 380 U.S. 479, 489–90, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965).[6] Because the present case involves a First Amendment attack on Indiana's election laws, abstention may be ill advised.

The "pivotal question in determining whether abstention is appropriate," however, is whether the statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Id.,* quoting *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965). The Supreme Court has acknowledged that, theoretically speaking, there always exists the possibility that the state court could so construe the challenged statute. "But the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary. Rather, '[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible to a limiting construction.'" *Midkiff, supra,* 467 U.S. at 237, 104 S.Ct. at 2327, quoting *Zwickler v. Koota,* 389 U.S. 241, 251, and n. 14, 88 S.Ct. 391, 397, and n. 14, 19 L.Ed.2d 444 (1967).

In the present case, the abstention issue is complicated by the fact that Indiana does not have a statute that flatly prohibits write-in voting.[7] Instead, the plaintiffs argue, Indiana has effectively proscribed

---

Hawaii's prohibition of write-in voting violated the voters' right to free speech under the First and Fourteenth Amendments. *Burdick v. Takushi,* 737 F.Supp. 582 (D.Hawaii, 1990).

**5.** *See also Country of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959) (abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it").

**6.** *But see City of Houston, supra,* 107 S.Ct. at 2517 n. 4 (Powell, J., joined by Chief Justice Rehnquist, and Justices O'Connor and Scalia,

concurring in the judgment in part and dissenting in part); *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 509–10, 105 S.Ct. 2794, 2805, 86 L.Ed.2d 394 (1985) (O'Connor, J., joined by Chief Justice Burger and Justice Rehnquist, concurring) ("[The Supreme Court] has never endorsed" the proposition that abstention is particularly disfavored in First Amendment cases).

**7.** *Compare* Nevada Rev.Stat.Ann. § 293.270(2) ("Voting must be only upon candidates whose names appear upon the ballot prepared by the election officers, and no person may write in the name of an additional candidate for any office").

write-in votes by repealing the statutes enabling such votes.

In 1891, Indiana's General Assembly provided for "paster" ballots, whereby a voter could vote for persons whose names did not appear on the official ballot. Section 29–1126, Burns' Ind.Stat.Ann. 1933, Baldwin 1934 section 7141; Acts 1891 c. 94, section 10, p. 124, amending Acts 1889, c. 87 section 46, p. 157. In 1897, the General Assembly ennacted new election laws "repealing all laws in conflict herewith." Acts 1897, c. 41, p. 49. Although this new Act did not provide for paster ballots, the Indiana Supreme Court rejected the argument that the 1891 paster provisions were repealed by the 1897 Act:

> It is clear that this act dealt with the printing and voting of ballots containing the names of persons nominated by parties or groups of petitioners, and that it did not purport to affect the existing method of indicating a choice for a person whose name did not appear upon the ballot as printed by the proper election board.

*Cleveland v. Palin,* 209 Ind. 382, 199 N.E. 142, 146 (1936). That court further noted that statutes ennacted after the 1897 Act implied that the legislature believed paster ballots to still be valid. Those statutes required voting machines to be capable of handling "irregular ballots," which were defined as "[b]allots voted for any person whose name does not appear on the ballot label on the machine as a candidate for office ..." Sections 29–2403 and 29–2413, Burns' Ind.Stat.Ann.1933, Baldwin 1934 §§ 7351, 7361, section 3, Acts 1901, c. 260.

In 1945, Indiana's General Assembly ennacted I.C. 3–1–23–23 (Acts 1945, c. 208, section 262, p. 680), which dealt extensively with the paster ballots. The year 1969 saw the beginning of the end for paster ballots in Indiana. The General Assembly expressly repealed Acts 1945, c. 209, section

272, which had defined "irregular ballots" as "ballots voted for any person whose name does not appear on the ballot." At that time, however, the statute providing for paster ballots was still in force, as were the statutes requiring voting machines to accomodate paster ballots.

But in 1983, the paster ballot provisions were largely repealed by P.L. 6–1983, section 18, and the Indiana Election Code was wholly repealed and replaced by P.L. 5–1986, § 61, effective March 4, 1986. The statutes requiring voting machines to process write-in votes have also been repealed.[8] (Compare Former I.C. 3–2–4–3 and –4 with the present 3–11–7 *et seq.* and 3–11–13–3, and Former 3–1–31–2 with the present 3–11–5–10 and 3–11–13–3).

Indiana's Election Code still contains a provision defining "paster" ballots (I.C. § 3–5–2–35), but a paster ballot has been redefined to mean "a sticker that is used to correct the name of a candidate on ballots" when a new candidate is appointed or selected pursuant to I.C. § 3–13–1–1 or 3–13–1–2 [9], or when a change must be made to correct a printing error. Neither of these circumstances could reasonably be construed to permit a voter to write in the name of anyone he or she chooses for a given office.

This court concludes, from the analysis above, that Indiana law does not permit voters to cast write-in votes. The earlier paster ballot provisions have been repealed, as have the statutes requiring voting machines to accommodate such votes. One cannot imply from the Election Code that write-in votes are permissable, nor can one glean that result from any reasonable construction of the statutes. Therefore, the Indiana Election Code is not "fairly subject" to a limiting construction. Further, no action has been initiated in state court [10], the defendants have not argued

---

**8.** As noted above, the Indiana Supreme Court in *Cleveland* relied upon analogous provisions to find that the paster ballot provisions had not been repealed by implication.

**9.** I.C. § 3–13–1–1: "This chapter applies to the filling of a candidate vacancy that arises for any reason if the vacancy leaves a political party

without a candidate for the office and occurs before the thirtieth day before an election."

**10.** If the Indiana Election Code were being challenged in a state court, *Younger* abstention could have applied. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

for abstention, and the defendants have not offered an interpretation of the Election Code that would avoid the constitutional claim.[11] Finally, the first amendment context suggests that abstention would be inappropriate. *City of Houston, supra.* In the present case,

> abstention would amount to shirking the solemn responsibility of the federal courts to guard, enforce and protect every right granted or secured by the Constitution of the United States.

*Kusper v. Pontikes,* 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). For the reasons listed above, this court declines to abstain from decision, and will proceed to the merits.[12]

II. *Summary Judgment*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The issue currently before the court is purely a question of law. Both parties have moved for summary judgment, and both agree that no material facts are disputed. The court concludes that summary judgment is appropriate in this case.

III. *Standard of Review*

The proper standard of review for constitutional challenges to state election laws is somewhat problematic. The plaintiffs

maintain that the election laws should be reviewed under a "strict scrutiny" standard. Conversely, the defendants argue that election laws must be upheld if they are "reasonable and non-discriminatory." Several courts and commentators have noted that the Supreme Court "has not been consistent in articulating the standard" by which to evaluate the constitutionality of election regulations. *Rainbow Coalition v. Oklahoma State Election Bd.,* 844 F.2d 740, 742–43 (10th Cir.1988).[13] Consequently, various standards have been employed by different courts of appeal.[14]

There is no "litmus-paper test" for evaluating constitutional challenges to election laws. *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). In ruling on such challenges, "there is 'no substitute for the hard judgments that must be made.'" *Anderson v. Celebrezze,* 460 U.S. at 789–90, 103 S.Ct. at 1570, quoting *Storer v. Brown, supra.* Without attempting to harmonize all of the approaches taken by other courts, and without adopting "result oriented" tags such as "strict scrutiny" or "rational relationship"[15], this court turns to the analysis established in *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).

In *Anderson,* the Supreme Court stated that in determining the validity of election laws, a court must balance "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth amendments" with the "precise interests put forward by the State as justifi-

**11.** Indeed, the State strenuously argues that Indiana's Election Code does prohibit write-in voting.

**12.** It is worth noting that two courts have assumed (without deciding) that Indiana law prohibits write-in voting. *See Hall v. Simcox,* 766 F.2d 1171, 1172 (7th Cir.1985); *Andrews v. State,* 505 N.E.2d 815, 820 n. 3 (Ind.Ct.App. 1987).

**13.** *See also Dixon v. Maryland State Ad. Election Laws,* 878 F.2d 776, 779 n. 4 (4th Cir.1989); *Hall v. Simcox, supra,* at 1173; *Dart v. Brown,* 717 F.2d 1491, 1501–02 (5th Cir.1983); Tribe, *American Constitutional Law* §§ 13–20, 13–21 (2d ed.

1988); Case Comment, 18 Suffolk U.L.Rev. 24, 30 (1984).

**14.** Compare *Erum v. Cayetano,* 881 F.2d 689, 692 n. 7 (9th Cir.1989), *Rainbow Coalition, supra,* at 743, and *Dart v. Brown, supra,* at 1500 (rejecting the "strict scrutiny" test), with *McLain v. Meier,* 851 F.2d 1045, 1049 (8th Cir.1988) (applying "strict scrutiny"), and *Unity Party v. Wallace,* 707 F.2d 59 (2nd Cir.1983) (applying the "rational relationship" standard).

**15.** *See Eu v. San Francisco,* 109 S.Ct. at 1026 (Stevens, J., concurring) (quoting *Illinois State Board of Elections,* 440 U.S. at 188–89, 99 S.Ct. at 992–93 (Blackmun, J., concurring)).

cations for the burden imposed by its rule." 460 U.S. at 789, 103 S.Ct. at 1570. "In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*[16] In its most recent decision in this area, the Supreme Court unanimously ruled that when:

the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest (citations omitted) ... and is narrowly tailored to serve that interest. (citations omitted).

*Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 109 S.Ct. 1013, 1019–20, 103 L.Ed.2d 271 (1989). The *Anderson* and *Eu* standards govern the following analysis.

IV. *The Character and Magnitude of the Constitutional Rights*

■ Indiana mistakenly persists in equating the present dispute with ballot access cases.[17] But the plaintiffs do not argue in the present motion that they have the right to have the names of the candidates they endorse printed on the official ballot. Rather, they assert that by prohibiting write-in voting, the State of Indiana restricted their right to vote for the candidates of their choice, even if that candidate's name does not appear on the ballot. The plaintiffs maintain that this infringes their first and fourteenth amendment rights of association and free speech.

The Supreme Court has not addressed this precise issue, although in *Williams v. Rhodes*, 393 U.S. 23, 27, 89 S.Ct. 5, 8, 21 L.Ed.2d 24 (1968), it affirmed the district court's order enjoining the State of Ohio from taking "any action which does not provide for write-in voting for all offices for the November 1968 general elections". *Socialist Labor Party v. Rhodes*, 290 F.Supp. 983, 992 (S.D.Ohio 1968), *aff'd sub nom Williams v. Rhodes.*[18] The only other federal court faced with the constitutionality of forbidding write-in voting held that such a prohibition violated voters constitutional rights to vote their conscience. *Burdick v. Takushi, supra* (D.Hawaii, 1990).[19, 20]

**16.** The defendants' belief that the Seventh Circuit adopted a "reasonable and nondiscriminatory" standard of review in *Hall v. Simcox* is erroneous. The *Hall* court was simply quoting from the *Anderson* decision, which noted that nondiscriminatory restrictions that protect the integrity and reliability of the electoral process are generally valid. 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9. Indiana has not claimed that the reliability of its elections are at risk. Furthermore, the *Hall* court simply concluded that it was reasonable for Indiana to require a preliminary showing of substantial support before printing a candidate's name on the ballot. The issue before this court is entirely different, and is not governed by the dicta of *Hall.*

**17.** *See* "Memorandum in Support of Defendants' Cross Motion for Summary Judgment", pp. 6–7.

**18.** The Supreme Court has also frequently noted the availability of a write-in option as a factor which mitigates the burdens caused by ballot-access restrictions. *See, e.g., Anderson v. Celebrezze,* 460 U.S. at 799 n. 26, 103 S.Ct. at 1575 n. 26; *Lubin v. Panish,* 415 U.S. at 723–24, 94 S.Ct. at 1323 (Blackmun, J., joined by Rehnquist, J., concurring in part); *Jenness v. Fortson,* 403 U.S. 431, 434, 91 S.Ct. 1970, 1972, 29 L.Ed.2d 554 (Ga.1971).

**19.** The plaintiffs have cited a great many state court cases holding that voters have the constitutional right to write-in their votes if the name of the candidate they prefer does not appear on the ballot. *See* "Plaintiffs' Response to Cross Motion for Summary Judgment", Appendix B. The court has read these cases, but finds them for the most part to be inapposite. The majority of them reach their conclusions on the grounds of the relevant state constitution, most of which differ substantially from the United States Constitution. Several simply uphold statutes mandating write-in voting, and never reach the constitutional issue. Three cases discuss the federal constitution and United States Supreme Court cases, but ultimately rule of state constitutional grounds. *See Canaan v. Abdelnour,* 40 Cal.3d 703, 221 Cal.Rptr. 468, 710 P.2d 268 (1985) (Bird, C.J.); *Shields v. Toronto,* 16 Utah 2d 61, 395 P.2d 829 (1964); *O'Sullivan v. Swanson,* 127 Neb. 806, 257 N.W. 255 (1934). Only one of the cases held that voters had rights under the Constitution of the United States. *See Kamins v. Board of Elections, District of Columbia,* 324 A.2d 187 (App.D.C.1974).

**20.** The State, citing the doctrine of *stare decisis,* also argues that this court must find Indiana's prohibition of write-in votes to be constitutional under *Hall v. Simcox,* 766 F.2d 1171 (7th Cir.

The plaintiffs seek to vindicate their constitutional rights both as potential candidates and as voters. The Supreme Court has often recognized that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Anderson*, 460 U.S. at 786, 103 S.Ct. at 1568, quoting *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). This court, like the courts in *Anderson* and *Burdick*, places more importance on a voter's right to vote for the candidate of his choice than on a candidate's right to run for office. While the Supreme Court has suggested that the right to be a candidate for public office may not be a fundamental right[21], the citizens' right to vote "rank[s] among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10. Indeed, "it is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986), quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958).

Indiana's ban on write-in voting directly implicates the plaintiffs' rights of association and political expression. It is clear that the character of the plaintiffs' asserted rights warrants constitutional protection; the Supreme Court has:

> repeatedly recognized that all qualified voters have a constitutionally protected right to vote, ... and to have their votes counted. (citations omitted)

*Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964). It is equally clear that rights asserted by the plaintiffs have considerable constitutional magnitude. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Id.* In a similar vein, the Supreme Court proclaimed that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote in undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964). Myriad passages from other Supreme Court cases could be cited to bolster the proposition that the right to vote for the candidate of one's choice, far from being a penumbral right, lies at the heart of the first amendment's protection.

### V. The State's Interests

The Supreme Court has often acknowledged the broad powers States possess un-

---

1985) and *Georges v. Carney*, 691 F.2d 297 (7th Cir.1982). The State's reliance on these cases is completely misplaced. It is true that this court must follow the Seventh Circuit's holdings. But not every phrase, reference, assumption, or observation contained in an opinion is a holding. *United States v. Daniels*, 902 F.2d 1238, 1241 (7th Cir.1990) (citations omitted). A "holding" refers only to the resolution of the precise legal issue facing a court.

The *Georges* case dealt with a plaintiff's efforts to get advisory questions of policy printed on the ballot. In that context, the Seventh Circuit stated that a ballot "is not a vehicle for communicating messages; it is a vehicle only for putting candidates and laws to the electorate to vote up or down." 691 F.2d at 301. This phrase cannot simply be superimposed, divorced from its rationale, upon a case dealing with the constitutionality of write-in voting. In no way can the Seventh Circuit's language be construed to devalue the communicative import of voting.

The *Hall* case is similarly inapposite. In that case, while upholding Indiana's 2% ballot access requirement, the Seventh Circuit simply noted that the absence of a write-in alternative did not require Indiana to adopt a more lenient threshhold for candidates to get their names printed on the ballot. Although the availability of a write-in option may alleviate the burden of relatively high ballot access requirements, it does not follow that it is constitutional to completely forbid write-in votes if the ballot access requirements are low.

The issues confronting the Seventh Circuit in *Georges* and *Hall* differ markedly from the issue presently before this court, and their holdings do not control the analysis.

**21.** See *Bullock v. Carter*, 405 U.S. at 142–43, 92 S.Ct. at 855–56; *Developments in the Law—Elections*, 88 Harv.L.Rev. 1111, 1218 and n. 8 (1975).

der Article I § 4 and Article II § 2, cl. 2, to determine voter qualifications and election regulations. A State's powers, however, are not unfettered; they must comport with the requirements of the first and fourteenth amendments. *Anderson,* 460 U.S. at 805–06, 103 S.Ct. at 1579; *Bullock v. Carter,* 405 U.S. at 140–41, 92 S.Ct. at 854. Of course, not every restriction on the right to vote is automatically suspect; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. at 730, 94 S.Ct. at 1279. But the Constitution exacts a stringent standard when core first amendment rights are involved:

> only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.

*Williams v. Rhodes,* 393 U.S. at 31, 89 S.Ct. at 11, quoting *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405 (1963).

The State of Indiana has identified two interests by way of justifying its ban on write-in votes: (1) "the risk that a little-known candidate may ride a storm of sudden popular passion into office before the voters have had a chance to examine and reflect upon his qualifications", "Memoran-

dum in Support of Defendants' Cross Motion for Summary Judgment", p. 6; and (2) to prevent frivolous candidacies. "Response to Plaintiffs' Supplemental Authorities in Support of Summary Judgment Motion", p. 3.[22] These interests are certainly legitimate,[23] but they cannot justify every voting restriction Indiana seeks to impose.[24]

## VI. *Balancing the Opposing Interests*

The next step in the *Anderson* analysis requires the court to determine the extent to which the State's legitimate interests necessitate burdening the voters' rights. In accordance with *Eu v. San Francisco, supra,* the State's interests must be "compelling," and must be "narrowly tailored" to avoid unduly restricting first amendment rights. Furthermore, while States are given some leeway in regulating elections, the Supreme Court has evinced a special concern with limitations that restrict one's "right to choose" one's representatives.[25]

Indiana's concern with voter education, though tenable, is not sufficiently compelling to justify a complete ban on write-in voting. New, passion-inspiring issues of domestic or international import arise frequently, requiring candidates for public office to adjust their platforms to address each new public concern. True, such is-

---

**22.** Indiana has not, and could not reasonably claim that banning write-in voting is necessary to prevent voter confusion. In ballot access cases, such a concern in legitimate; a voter confronted with a "laundry-list" ballot may well be disconcerted. In the present case, however, the plaintiffs do not seek to add a multitude of names to Indiana's ballot. They simply want the ballot to provide a space for write-in votes. While a long list of unfamiliar names may disorient a voter, no one is likely to be disoriented by a blank space on the ballot.

**23.** *See Anderson,* 460 U.S. at 796, 103 S.Ct. at 1574: "[t]here can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election"; *Jenness v. Fortson,* 403 U.S. at 442, 91 S.Ct. at 1976 (the State has an interest, if not a duty, to "protect the integrity of its political processes from frivolous or fraudulent candidacies").

**24.** As noted in footnote 2, *supra,* Indiana's interest in regulating nation-wide elections is "not nearly as strong" as its interest in state-wide or local elections. 460 U.S. at 804, 103 S.Ct. at 1578. The *Anderson* court observed that in nationwide elections, a State's stringent ballot access criteria has an effect beyond its own borders: "the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States." The national interest in choosing candidates for national office "is greater than any interest of an individual State." 460 U.S. at 795, 103 S.Ct. at 1573, quoting *Cousins v. Wigoda,* 419 U.S. 477, 490, 95 S.Ct. 541, 549, 42 L.Ed.2d 595 (1975).

**25.** *Cf. Illinois State Bd.,* 440 U.S. at 184, 99 S.Ct. at 990; *Lubin v. Panish,* 415 U.S. at 716, 94 S.Ct. at 1320; *Bullock v. Carter,* 405 U.S. at 144, 92 S.Ct. at 856; *Carrington v. Rash,* 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965); *United States v. Classic,* 313 U.S. 299, 314, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368 (1941).

sues might also catapult a formerly obscure person into the public spotlight, but Indiana's interest in banning write-in voting to prevent such a person from being elected to office unduly frustrates the voters' rights to choose their own representatives.[26] *Cf. Anderson v. Celebrezze*, 460 U.S. at 798, 103 S.Ct. at 1575. Moreover, "as a matter of practical politics, the electoral process contains its own cure for voters' ignorance about a particular candidate. Unknown candidates simply do not win large numbers of votes." *Anderson*, 460 U.S. at 798, n. 25, 103 S.Ct. at 1575, n. 25.

Furthermore, Indiana's ban on write-in voting is not narrowly tailored to avoid infringing on constitutional rights. To completely prevent citizens from voting for the candidates of their choice because their choices may be imprudent is highly paternalistic. Moreover, this court shares the Supreme Court's faith in the ability of voters to inform themselves about candidates and campaign issues, and to vote intelligently.[27] For these reasons, Indiana's interest in voter education is insufficient to justify the substantial restrictions that the ban on write-in voting imposes on the voters.

Similarly, Indiana's interest in protecting its citizens from fraudulent or frivolous candidacies does not warrant the complete prohibition of write-in voting. This interest "must be considered in light of the significant role that third parties have played in the political development of the Nation." *Illinois State Bd. of Elections*, 440 U.S. at 185, 99 S.Ct. at 991. A vote for a candidate whose name does not appear on the ballot endorses not only the person, but also the ideas that the person represents. While those ideas may not currently enjoy popularity, history has often proven that ideas launched from dissident fringes eventually gain widespread acceptance. *See Sweezy v. New Hampshire*, 354 U.S. 234, 250–51, 77 S.Ct. 1203, 1211–12, 1 L.Ed.2d 1311 (1957). Furthermore, the Supreme Court has repeatedly recognized that minority candidates and their supporters seek "influence, if not always electoral success." *Illinois State Bd. of Elections*, 440 U.S. at 185–86, 99 S.Ct. at 990–991.[28] It is this influence, this political expression, that is burdened by Indiana's complete ban on write-in voting.

Indiana's complete ban on write-in voting is not "narrowly tailored" to combat fraudulent candidacies, because it bans *all* write-in candidacies. Like the excessively high filing fees in *Lubin v. Panish*, the prohibition stifles serious votes along with the possibly spurious votes. *Burdick v. Takushi, supra* at 9. This court need not decide whether *any* restrictions on write-in voting would be unconstitutional; some regulations may well be valid.[29] This court does conclude, however, that *completely* forbidding write-in votes unduly restricts the plaintiffs' first amendment rights.

## VII. *Conclusion*

Indiana's interests in banning write-in voting do not justify the extraordinary burden they impose on the plaintiffs first amendment rights. As Chief Judge Fong noted in *Burdick*, "the ban on write-in voting is not merely a restriction on speech. It constitutes a total ban on the right to vote for the candidate of one's choice if that candidate is not listed on the ballot." The citizens' right to vote for the candi-

---

**26.** *See* A. Bickel, *Reform and Continuity* 88 (1971), observing that unforeseen circumstances, such as the withdrawal of Lyndon Johnson and the assassination of Robert F. Kennedy in 1968, can drastically affect the political expectations of voters.

**27.** *Anderson v. Celebrezze*, 460 U.S. at 797, 103 S.Ct. at 1574.

**28.** "It is apodictic that a vote does not lose its constitutional significance merely because it is cast for a candidate who has little or no chance of winning." *Dixon*, 878 F.2d at 782.

**29.** For example, Indiana bristles at the Fourth Circuit's dictum that voters may have a constitutional right to vote for cartoon characters, notably "Donald Duck". *See Dixon*, 878 F.2d at 785 n. 12 ("such a vote might, under appropriate circumstances, be meant as a serious satirical criticism of the powers that be"). This court expresses no opinion as to whether a vote for Donald Duck, Miss Piggy, or Mr. Ed would be constitutionally protected.

dates of their choice is of paramount importance, because it preserves all other civil and political rights. *Reynolds v. Sims,* 377 U.S. at 562, 84 S.Ct. at 1381; *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886). For the reasons detailed above, this court holds that Indiana's blanket prohibition on write-in voting violates the first and fourteenth amendments of the United States Constitution. The State of Indiana must take the steps necessary to permit, facilitate and tabulate [30] write-in votes for the upcoming general elections.

Although the issue resolved today represents only a portion of the dispute between the parties, the court finds that there is no just reason for delay, and enters final partial summary judgment pursuant to FRCP 54(b) in favor of the plaintiffs on their constitutional challenge to Indiana's prohibition of write-in voting.

It is so ORDERED.

---

**30.** The right to vote incorporates "the rights to have one's vote counted" (*Reynolds v. Sims,* 377 U.S. at 554, 84 S.Ct. at 1383) and published.